845 A.2d 60

Christopher T. LIZZI

v.

**WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY.**

No. 420, Sept. Term, 2002.

Court of Special Appeals of Maryland.

Dec. 22, 2003.

Reconsideration Denied March 8, 2004.

2

Argued before JAMES R. EYLER, BARBERA and THEODORE G. BLOOM (specially assigned), JJ.

BARBERA, Judge.

Appellant, Christopher T. Lizzi, sued appellees, the Washington Metropolitan Area Transit Authority ("WMATA") and seven individuals employed by WMATA, for unlawful termination of employment. On motion of appellees, the Circuit Court for Prince George's County dismissed all three counts of appellant's complaint on the ground of *res judicata,* and the third count on the additional ground of state sovereign immunity.

Appellant appeals and raises the following issues for our review:

I.   Whether the federal court's dismissal for lack of subject matter jurisdiction of appellant's claims against WMA-

**4**

TA in the federal court lawsuit is *res judicata* as to appellant's claims against WMATA in this case.

II. Whether the federal court's dismissal for lack of subject matter jurisdiction of appellant's claims against the individual defendants in their official capacities in the federal court lawsuit is *res judicata* as to appellant's claims against the individual defendants in their individual capacities in this case.

III. Whether sovereign immunity bars appellant's claims against any of the appellees.

IV. Whether appellant's state constitutional law claim is barred by the statute of limitations?

We conclude that appellant's complaint was barred by sovereign immunity, and therefore affirm the judgment of the circuit court.

## FACTS AND PROCEEDINGS

Because this appeal is from the dismissal of appellant's complaint, the facts are as alleged by him. Appellant was employed by WMATA as a Metro wheelchair life mechanic at all times relevant to this action. During the summer of 1997, he missed several weeks of work due to a number of medical conditions that arose within the same two-month period.

WMATA directed appellant to submit to a medical examination on August 14, 1997. He refused, explaining that he was taking delusive medication for his periodontal problems, and therefore unable to drive himself to the examination. WMATA warned him that if he failed to submit to the examination, he would be terminated.

On August 18, 1997, appellant appeared for a medical examination conducted by a physician regularly employed by WMATA. When the physician requested that appellant return the next day for an independent medical examination, appellant refused, again citing the delusive effects of his medication. Upon appellant's failure to submit to the second examination, WMATA notified him that he "was under investigation which [could] lead to his dismissal."

According to his complaint, appellant thereafter applied for leave under the federal Family and Medical Leave Act ("FMLA") for periods from June 20 to July 5, 1997, and August 9 to August 23, 1997. On the day he filed his FMLA leave application, appellant was notified that he was terminated for having violated the requirement that he submit to the independent medical examination.

Within the next several weeks, appellant filed suit in both the United States District Court for the District of Maryland and the Circuit Court for Prince George's County, alleging in both actions that WMATA and seven individual defendants, all of whom were employees of WMATA, had violated his rights under FMLA. Appellant subsequently amended his state court complaint to add a claim for breach of contract. WMATA and the individual defendants answered the amended complaint asserting, among eighteen affirmative defenses, the defenses of sovereign immunity, *res judicata*, and collateral estoppel.

In March 2001, the circuit court ordered a stay of the state court action pending the decision of the United States Court of Appeals for the Fourth Circuit in the federal action. The federal district court had previously ruled that Eleventh Amendment immunity barred appellant's claims against WMATA, but that FMLA permits appellant to bring an action against the employees of WMATA in their individual capacities. The question on appeal was whether appellant's claims as to all defendants in federal court were barred on the ground of Eleventh Amendment immunity.[1]

In an opinion decided June 20, 2001, the Fourth Circuit affirmed in part and reversed in part the district court's ruling. The Fourth Circuit held that the entirety of appellant's complaint must be dismissed for lack of subject matter

---

1. The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted, against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const amend. XI.

jurisdiction because the individual defendants as well as WMATA were immune from suit in federal court. *Lizzi v. Alexander, et al.*, 255 F.3d 128 (4th Cir.2001), *cert. denied sub nom. Lizzi v. Washington Metro. Area Transit Auth.*, 534 U.S. 1081, 122 S.Ct. 812, 151 L.Ed.2d 697 (2002).

Following issuance of the Fourth Circuit's opinion, WMATA filed a motion to (1) lift the stay in the state court action and (2) dismiss the entire action. The parties appeared for a motions hearing on January 4, 2002. On the morning of the hearing, counsel for appellant filed a second amended complaint, adding a third count claiming violations by the individual defendants of appellant's state constitutional rights.[2]

At the close of arguments, the court dismissed Counts I and II of appellant's complaint on the ground of *res judicata.* The court did not rule on the then-newly-added Count III of the second amended complaint, affording WMATA the opportunity to respond to it.

WMATA filed a motion to strike the second amended complaint or, in the alternative, to dismiss Count III on the grounds of sovereign immunity, *res judicata,* and statute of limitations. The motion came on for a hearing on March 29, 2002. After hearing arguments, the court dismissed Count III on two grounds, sovereign immunity and *res judicata.*

This appeal followed.

## DISCUSSION

We are asked to decide whether the circuit court correctly dismissed all three counts of appellant's complaint on the ground of *res judicata* and, insofar as Count III is concerned, the additional ground of sovereign immunity. We shall affirm the circuit court's dismissal of appellant's complaint but, at

---

**2.** Appellant originally cited only Articles 24 and 46 of the Maryland Declaration of Rights in Count III of the second amended complaint. Appellant thereafter filed an amendment by interlineation to add Article 19 to that count.

least insofar as Counts I and II are concerned, for reasons other than those relied upon by that court.

The standards governing the grounds for filing a motion to dismiss, the grant of such a motion, and the appellate courts' review of the ruling are well settled.

Under Maryland Rule 2–322(b)(2) (1996), a defendant may seek a dismissal on the ground that the complaint fails "to state a claim upon which relief can be granted." When moving to dismiss, a defendant is asserting that, even if the allegations of the complaint are true, the plaintiff is not entitled to relief as a matter of law. Thus, in considering a motion to dismiss for failure to state a claim, the circuit court examines only the sufficiency of the pleading. "The grant of a motion to dismiss is proper if the complaint does not disclose, on its face, a legally sufficient cause of action." This Court, therefore, shall assume the truth of all well-pleaded relevant facts as alleged in appellant's complaint and all reasonable inferences drawn therefrom.

*Heritage Harbour, L.L.C. v. John J. Reynolds, Inc.,* 143 Md.App. 698, 704–05, 795 A.2d 806 (2002). Moreover, in reviewing a court's grant of a motion to dismiss, we must determine whether the decision was legally correct. *Porterfield v. Mascari II, Inc.,* 142 Md.App. 134, 139, 788 A.2d 242 (2002), *aff'd,* 374 Md. 402, 823 A.2d 590 (2003). Thus, so long as the complaint, on its face, does not state a claim upon which relief can be granted, we may affirm the dismissal of the complaint, even if on a ground not relied upon by the circuit court. *Society of Am. Foresters v. Renewable Natural Res. Found.,* 114 Md.App. 224, 233 n. 3, 689 A.2d 662 (1997).

As we have said, the circuit court dismissed all three counts of the complaint on the ground of *res judicata,* and Count III on the additional ground of sovereign immunity. Appellant vigorously attacks the circuit court's reliance upon *res judicata* in dismissing the state action. Appellant argues preliminarily that, because the dismissal of the federal suit was for lack of subject matter jurisdiction, it was without prejudice and, therefore, is not a judgment "on the merits"; consequent-

8

ly, it had no preclusive effect on his state suit. Appellant further argues that the federal court's decision, with respect to both WMATA and the individual defendants, was grounded on Eleventh Amendment immunity and, since Eleventh Amendment immunity only bars suit in federal court, the Fourth Circuit's decision did not decide the different question of whether appellant is precluded from suing these same defendants in state court.

WMATA and the individual appellees respond with equal vigor. They argue, *inter alia*,[3] that the federal court's judgment is a judgment on the merits, and that it was not based merely on Eleventh Amendment immunity but on the broader ground of sovereign immunity. Therefore, appellees argue, the circuit court was legally correct in dismissing the state action on the grounds of *res judicata.*

It is not necessary that we decide whether *res judicata* bars appellant's suit on the ground that the federal court ruled the appellees immune. This is because we hold that WMATA and the individual appellees are shielded from suit in state court by the doctrine of sovereign immunity, and that WMATA has not waived that immunity for claims such as those brought by appellant.[4]

---

3. Appellees make several arguments in support of the court's dismissal of each of the three counts of appellant's complaint, including that Count III is barred by the statute of limitations and by *res judicata* because it was a claim that could have been, but was not, raised in appellant's federal suit. Our resolution of this appeal does not require us to address all of the arguments pressed by appellees, so we do not address them.

4. Although we do not reach the question of whether the Fourth Circuit's decision in *Lizzi* is *res judicata*, we point out that Eleventh Amendment immunity is not synonymous with the broader doctrine of sovereign immunity, but is instead a manifestation of it. *See Federal Maritime Comm'n v. South Carolina State Ports Auth.*, 535 U.S. 743, 753, 122 S.Ct. 1864, 152 L.Ed.2d 962 (2002) ("[T]he Eleventh Amendment does not define the scope of the States' sovereign immunity; it is but one particular exemplification of that immunity."); *see also Alden v. Maine*, 527 U.S. 706, 728, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999) ("[S]overeign immunity derives not from the Eleventh Amendment but from the structure of the original Constitution itself.").

WMATA was created by interstate compact with the consent of the United States Congress in 1966. The signatories to the WMATA Compact ("the Compact") are Maryland, Virginia, and the District of Columbia. *See* Md.Code (1977, 2001 Rep. Vol.), § 10–203 of the Transportation Article.[5] Because the Compact was created by Congressional consent, issues relating to its construction are a matter of federal law. *Morris v. Washington Metro. Area Transit Auth.*, 781 F.2d 218, 220 n. 2 (D.C.Cir.1986) (citing *Cuyler v. Adams*, 449 U.S. 433, 438, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981)).

■ WMATA enjoys sovereign immunity as if it were the State or one of its agencies, because such immunity was conferred upon it by Maryland upon its signing the Compact. *Maxwell v. Washington Metro. Area Transit Auth.*, 98 Md. App. 502, 513, 633 A.2d 924 (1993). In *Maxwell* we said,

"WMATA's sovereign immunity exists because the signatories have successfully conferred their respective sovereign immunities upon it. Congress has power to legislate for the District of Columbia and to create an instrumentality that is immune from suit. Maryland and Virginia have immunity under the eleventh amendment [in federal courts] and each can confer that immunity upon instrumentalities of the state. It is clear that each of the three signatories attempted to confer its sovereign immunity upon WMATA. We think they succeeded."

*Id.* at 514, 633 A.2d 924 (citation omitted); *see also Beebe v. Washington Metro. Area Transit Auth.*, 129 F.3d 1283, 1287 (D.C.Cir.1997) ("In signing the WMATA Compact, Maryland, Virginia, and the District of Columbia conferred upon WMATA their respective sovereign immunities.").

■ "[A] waiver of sovereign immunity is to be strictly construed, in terms of its scope, in favor of the sovereign." *Department of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 261, 119 S.Ct. 687, 142 L.Ed.2d 718 (1999); *accord Martin v.*

---

5. Hereinafter, unless otherwise stated, all references to the Code are to the Transportation Article (2001 Repl.Vol.).

*Washington Metro. Area Transit Auth.*, 273 F.Supp.2d 114, 119 (D.D.C.2003). "Such a waiver must also be 'unequivocally expressed' in the statutory text." *Blue Fox*, 525 U.S. at 261, 119 S.Ct. 687 (citation omitted).

The only express waiver of the signatories' sovereign immunity is a partial waiver and is found in Section 80 of the Compact. That section provides:

**The Authority shall be liable for its contracts and for its torts and those of its directors, officers, employees and agents committed in the conduct of any proprietary function, in accordance with the law of the applicable signatory (including rules on conflict of laws),** but shall not be liable for any torts occurring in the performance of a governmental function. The exclusive remedy for such breach of contracts and torts for which the Authority shall be liable, as herein provided, shall be by suit against the Authority. **Nothing contained in this title shall be construed as a waiver by the District of Columbia, Maryland, Virginia and the counties and cities within the zone of any immunity from suit.**

§ 10–204(80) (emphasis supplied). It is evident from this provision of the Compact that, with the exception of claims involving contracts and torts committed in the conduct of any proprietary function, WMATA has not waived its immunity from suit.

Appellant asks us, in effect, to ignore the language in Section 80 that limits its waiver of sovereign immunity and to interpret the "sue and be sued" clause in Section 12(a) of the Compact as a waiver of WMATA's sovereign immunity. Section 12(a) provides: "In addition to the powers and duties elsewhere described in this title, and **except as limited in this title,** the Authority may . . . (a) Sue and be sued." § 10–204(12)(a) (emphasis supplied). We decline to read Section 12(a) as appellant suggests.

It is well settled that " '[w]here the statute to be construed is a part of a statutory scheme, the legislative intention is not determined from that statute alone, rather it is

to be discerned by considering it in light of the statutory scheme.'" *Breitenbach v. N.B. Handy Co.*, 366 Md. 467, 480, 784 A.2d 569 (2001) (citation omitted). We, therefore, may not read Section 12(a) in a vacuum; rather, we must consider it together with Section 80 of the Compact. That section, as we have noted, plainly delineates the limited classes of cases for which WMATA has waived immunity, while at the same time making express that, for all other cases, the signatories retain their immunity from suit.

It has been held that the "sue and be sued" language of Section 12(a) "extend[s] only as far as the more specific (and partial) waiver of sovereign immunity contained in section 80 of the Compact." *Watters v. Washington Metro. Area Transit Auth.*, 295 F.3d 36, 40 (D.C.Cir.2002), *cert. denied*, 538 U.S. 922, 123 S.Ct. 1574, 155 L.Ed.2d 313 (2003); *accord Lizzi*, 255 F.3d at 133–34. We concur with the federal courts' construction of the "sue and be sued" wording of Section 10–204(12)(a).

Appellant's suit is in three counts: violation of FMLA (Count I); breach of contract (Count II); and violation of Articles 19, 24 and 46 of the Maryland Declaration of Rights (Count III). It is clear that Counts I and III do not allege a suit in contract or tort involving a proprietary function.[6] Therefore, WMATA is immune from suit because neither

---

**6.** The United States Court of Appeals for the District of Columbia has held that hiring and firing decisions are not proprietary: "Although employment decisions are not quintessential governmental functions ... 'decisions concerning the hiring, training, and supervising of WMATA employees are discretionary in nature, and thus immune from judicial review.'" *Beebe v. Washington Metro. Area Transit Auth.*, 129 F.3d 1283, 1287 (D.C.Cir.1997) (quoting *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1217 (D.C.Cir.1997)). The Fourth Circuit has likewise declared in its *Lizzi* opinion that "hiring, training, and supervision practices are governmental functions." 255 F.3d 128, 138 (4th Cir.2001), *cert. denied sub nom. Lizzi v. Washington Metro. Area Transit Auth.*, 534 U.S. 1081, 122 S.Ct. 812, 151 L.Ed.2d 697 (2002).

The court also noted in *Lizzi:* "There is no contention that the exercise of authority at issue in this suit was in any sense a tort or a contract 'committed in the conduct of any proprietary function." *Id.* at 133.

**12**

count comes within the limited waiver of immunity expressed by Section 80.

Moreover, although appellant's Count II is couched in terms of "breach of contract," which, by invocation of those words would seemingly bring that count within WMATA's waiver of immunity in Section 80 for suits involving its contracts, we conclude that, fairly read, the count does not allege a contract breach. Instead, like Count I, it alleges a violation of FMLA. Count II reads:

Defendant WMATA and plaintiff entered into a contract under which WMATA was obligated to comply with the provisions of the FMLA and/or certain policies and procedures adopted by WMATA and promulgated by WMATA to plaintiff (which policies and procedures contain provisions similar to the provisions of the FMLA and include, but are not limited to, WMATA Policy/Instruction 7.23/0 and WMATA FMLA Processing Guidelines). Defendant WMATA terminated plaintiff in violation of that contract, causing plaintiff damages.

The Compact contains no references that we could find to a contract between the agency and its employees to adhere to the dictates of FMLA, and appellant does not suggest otherwise. The only provision of the Compact that would appear to cover appellant's claim is Section 66, which is entitled "Labor standards," and calls for labor disputes to be resolved by resort to binding arbitration. *See* § 10–204(66)(c).[7]

Moreover, the policies and procedures cited in Count II, even as characterized by appellant, do not reference a contract between the parties but, rather, simply set forth "provisions

---

7. Appellant does not allege that his termination was in violation of any bargaining agreement with WMATA. In any case, as appellees explained in their motion to dismiss the second amended complaint, appellant, as a union employee, would have been required to submit to final and binding arbitration of such an employment grievance. *See Sanders v. Washington Metro. Area Transit Auth.*, 819 F.2d 1151, 1156–57 (D.C.Cir.1987); *see also Robinson v. Bunch*, 367 Md. 432, 446–47, 788 A.2d 636 (2002) (holding that failure to exhaust administrative remedies entitles agency to dismissal of cause of action).

similar to the provisions of FMLA." We shall not countenance appellant's attempt to come within the scope of WMATA's limited waiver of immunity for contract claims simply by denominating a FMLA violation as one for breach of contract. We conclude, therefore, that Count II, like Counts I and III, is barred by sovereign immunity.

Appellant seeks to escape the foreclosing effect of WMATA's sovereign immunity, at least insofar as the state constitutional claims raised in Count III are concerned, by resort to the Court of Appeals' decision last year in *Robinson v. Bunch*, 367 Md. 432, 788 A.2d 636 (2002). That case affords him no relief.

In *Robinson*, the plaintiffs were employees (and one former employee) of the Division of Parole and Probation within the Maryland Department of Public Safety and Correctional Services. The plaintiffs filed suit against the Secretary of the Department, claiming that the Department's failure to compensate them for overtime work violated the federal Fair Labor Standards Act ("FLSA"). The circuit court granted the Secretary's motion to dismiss. This Court reversed that ruling, holding, *inter alia*, that FLSA preempted the Maryland statutory administrative and judicial remedy provided in Md.Code (1993, 1997 Repl.Vol.), § 12–402 of the State Personnel and Pensions Article ("SPP"). *Bunch v. Robinson*, 122 Md.App. 437, 461–62, 712 A.2d 585 (1998).

The Court of Appeals granted the Secretary's petition for a writ of certiorari to answer the question of whether Congress possessed the power to abrogate a state's sovereign immunity for suits under FLSA that are filed in state court. The Court of Appeals stayed the appeal pending the United States Supreme Court's opinion in *Alden v. Maine*, 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999). After the Supreme Court issued its decision in *Alden*, the Secretary moved for summary reversal of this Court's decision. The employees did not oppose the motion. *Robinson*, 367 Md. at 438, 788 A.2d 636.

The Court of Appeals denied the motion and amended its order granting certiorari to address whether the plaintiffs

maintained the right to pursue their FLSA claim against the Department in state court pursuant to the state constitution or other state law. *Id.* at 438–39, 788 A.2d 636. In its opinion deciding that question, the Court declared preliminarily that "[t]he *Alden* case made it clear that the FLSA could not constitutionally authorize an action such as the one here involved. At the same time, however, the Supreme Court made it clear in *Alden* that *state law* could authorize such actions." *Id.* (internal citation omitted).

The Court of Appeals proceeded on the assumption that the substantive overtime provisions of FLSA are applicable to the plaintiff employees, because the Secretary did not challenge this Court's holding that the substantive provisions *were* applicable. With that assumption, the Court considered whether any state law provided the employees a remedy for violations of FLSA or state law respecting the entitlement to overtime compensation. *Id.* at 442–43, 788 A.2d 636.

The Court examined SPP § 8–302, which provides that state employees are eligible for overtime compensation provided in that subtitle or, to the extent applicable, as required by the FLSA. *See* Md.Code (1993, 1997 Repl.Vol.), § 8–302 of the State Personnel and Pensions Article. The Court also considered Subtitle 14 of the same Article, which waives the state's sovereign immunity with respect to claims filed pursuant to SPP § 8–302 and provides a remedy for violations thereof. *Id.* at 443, 788 A.2d 636. The Court concluded:

> The above-reviewed statutory provisions make it clear that covered state employees are entitled to overtime compensation in accordance with applicable state law or the FLSA, whichever is greater, that there is a duty on the part of the State or the appropriate officials to make such payments or provide for them through the budget process, and that sovereign immunity is not a defense.

*Id.*

The Court then observed that, "if the General Assembly had not enacted a specific statutory remedy, state employees would certainly have a common law remedy in Maryland

courts to enforce their rights to mandated overtime compensation under state or federal law." *Id.* at 444, 788 A.2d 636. Specifically, " 'Article 19 [of the Maryland Declaration of Rights] insures that rights belonging to Marylanders are "not illegally or arbitrarily denied by the government." ' " *Id.* (quoting *Doe v. Doe,* 358 Md. 113, 127–28, 747 A.2d 617 (2000) (quoting *State v. Board of Educ. of Montgomery County,* 346 Md. 633, 647, 697 A.2d 1334 (1997))).

Appellant seizes upon this observation in *Robinson* to suggest that WMATA is subject to the remedies set forth in Articles 19, 24, and 46 of Maryland's Declaration of Rights without regard, apparently, to WMATA's immunity to all but the narrow class of suits identified in Section 80 of the Compact. We disagree.

We note, preliminarily, that the Court of Appeals has specifically stated, in an action involving claims for wrongful dismissal under Articles 24 and 46, that "the doctrine of sovereign immunity . . . precludes such a damages action against the 'State of Maryland' absent legislation consenting to the suit." *Ritchie v. Donnelly,* 324 Md. 344, 369, 597 A.2d 432 (1991). WMATA has not waived its immunity to be sued in state court for violations of the Maryland Declaration of Rights.

Furthermore, appellant overlooks that WMATA is an interstate compact. One party to an interstate compact may not unilaterally subject the compact agency to its laws without the consent of the other parties to the compact. In discussing compact agencies, the Supreme Court has said that these entities "typically are creations of three discrete sovereigns: two States and the Federal Government." *Hess v. Port Authority Trans–Hudson Corp.,* 513 U.S. 30, 40, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994). "[N]o single State has dominion over an entity created by interstate compact," "state/federal shared power is the essential attribute of such an entity," and, as such, a compact " 'shifts a part of a state's authority to another state or states, or to the agency the several states jointly create to run the compact.' " *Id.* at 42 and n. 11, 115 S.Ct. 394

(citation omitted). The Court went on in *Hess* to contrast an interstate compact agency with a single state, saying that, although the voters of a single state "may exercise their political will to direct state policy; bistate entities ... are not subject to the unilateral control of any one of the States that compose the federal system." *Id.* at 42, 115 S.Ct. 394.[8]

Thus, the Fourth Circuit has held that Article III, Section 40 of the Maryland Constitution prohibiting "quick take" condemnations did not prohibit WMATA from utilizing such condemnations to acquire property. *Washington Metro. Area Transit Auth. v. One Parcel of Land*, 706 F.2d 1312, 1321–22 (4th Cir.), *cert. denied*, 464 U.S. 893, 104 S.Ct. 238, 78 L.Ed.2d 229 (1983). This is because "the Maryland Constitution's prohibition against laws authorizing quick-take condemnation merely withdraws from the state the power of quick-take condemnation that, as a sovereign, it would otherwise possess; the prohibition does not, however, bar Maryland from exercising that power when delegated to it by the federal government." *Id.* (footnotes omitted).

It has also been held that WMATA is " 'necessarily exempt from the personnel laws of the signatories.' " *Malone v. Washington Metro. Area Transit Auth.*, 622 F.Supp. 1422, 1428 (E.D.Va.1985) (citation omitted). In that case, a Virginia plaintiff was denied declaratory relief despite allegations that WMATA's collective bargaining agreement violated Virginia's Right to Work Act, because "[t]he plain language of Section 12(g) exempts WMATA employment policies from all regulation by the signatories." *Id.*[9]

---

8. *Hess* involved the nonapplicability of the Eleventh Amendment to the Port Authority of New York and New Jersey. The Court specifically distinguished the Port Authority from WMATA, citing with approval the statement in *Morris v. Washington Metro. Area Transit Auth.*, 781 F.2d 218, 227 (D.C.Cir.1986), that " '[w]here an agency is so structured that, as a practical matter, if the agency is to survive, a judgment must expend itself against state treasuries, common sense and the rationale of the eleventh amendment require that sovereign immunity attached to the agency.' " *Hess v. Port Authority Trans–Hudson Corp.*, 513 U.S. 30, 49, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994).

9. Section 12(g) of the Compact provides that WMATA may:

To like effect is *Lucero–Nelson v. Washington Metro. Area Transit Auth.*, 1 F.Supp.2d 1, 7 (D.D.C.1998). In that case, the district court ruled that WMATA was not subject to the D.C. Human Rights Act because, "pursuant to the WMATA Compact, one signatory may not impose its legislative enactment upon the entity created by it without the express consent of the other signatories and of the Congress of the United States." *Accord C.T. Hellmuth & Assocs., Inc. v. Washington Metro. Area Transit Auth.*, 414 F.Supp. 408, 409 (D.Md.1976) (ruling that the Maryland Public Information Act did not apply to WMATA because "one party may not enact legislation which would impose burdens upon the compact absent the concurrence of the other signatories").

Appellant acknowledges these cases, but argues that they merely pertain to whether Maryland can impose a legal duty upon WMATA. He counters with a solitary case, *Queen v. Washington Metro. Area Transit Auth.*, 901 F.2d 135 (D.C.Cir.1990), relying on it for the proposition that Maryland law provides a *remedy* for WMATA's violations of federal law, and that, as a consequence, WMATA is bound to accord its employees the remedy provided by Maryland law. Appellant claims that *Queen* "establish[es] beyond dispute that ... the issue of whether a particular plaintiff has a remedy against WMATA can indeed be answered by Maryland law." *Queen* does not assist appellant's cause.

In that case, a WMATA employee, while driving a WMATA-owned vehicle, struck Regina Queen while she was walking along the side of the road. WMATA was self-insured for this type of claim. Queen filed suit in federal court in the District of Columbia against the driver and WMATA, as insurer.[10]

---

[c]reate and abolish offices, employments and positions (other than those specifically provided for herein) as it deems necessary for the purposes of the Authority, and fix and provide for the qualification, appointment, removal, term, tenure, compensation, pension and retirement rights of its officers and employees without regard to the law of any of the signatories.

10. WMATA had previously obtained a declaratory judgment of nonliability in a Maryland circuit court. *Queen v. Washington Metro. Area*

The jury returned a verdict in Queen's favor. The issue on appeal was whether Queen could file a direct action against WMATA as the insurer prior to obtaining a judgment against the driver. The United States Court of Appeals for the District of Columbia certified to the Maryland Court of Appeals two questions concerning application of Maryland law to Queen's direct action against WMATA for her tort claims.[11]

Appellant points to the fact that the federal court certified the question of Queen's right to file a direct action against WMATA as insurer, and asserts from that fact the proposition that Maryland law can provide the remedy for suits filed against WMATA. *Id.* at 138. We do not read *Queen* to suggest any such thing.

Queen, unlike appellant, filed an action that came within the limited waiver of sovereign immunity set forth in Section 80 of the Compact. Section 80 explicitly states that "[t]he Authority shall be liable for its contracts and for its torts and those of its directors, officers, employees and agents committed in the conduct of any proprietary function, *in accordance with the law of the applicable signatory (including rules on conflict of laws).* ..." (Emphasis supplied.) In other words, WMATA is only subject to state law on those actions for which it has waived immunity. Appellant's cause of action does not fall within that limited waiver.

Finally, for the same reasons as those discussed by the Fourth Circuit in its *Lizzi* decision, we hold that dismissal of the individual WMATA employee defendants was proper. The Fourth Circuit held in *Lizzi* that the Eleventh Amendment shields WMATA from appellant's assertions that the

---

*Transit Auth.*, 901 F.2d 135, 136 (D.C.Cir.1990). The circuit court ruled that WMATA was not liable for the accident under the theory of *respondeat superior* because the driver was acting outside the scope of his duties at the time of the accident. *Id.* at 137.

11. The Court of Appeals answered the certified questions in *Washington Metro. Area Transit Auth. v. Queen*, 324 Md. 326, 597 A.2d 423 (1991).

agency violated FMLA, 255 F.3d at 132; and the Compact does not waive that immunity from suit, *id.* at 138.[12]

The Court further held, with regard to the individual defendants in the case, who Lizzi asserts to have been his supervisors, that "WMATA's Eleventh Amendment immunity transfer[red] to the supervisors because the individuals were sued in their official capacities for their official acts." *Id.* In this latter regard the Fourth Circuit said: "The FMLA does not permit a plaintiff to evade the strictures of sovereign immunity by suing the individual defendants as the employer rather than the state." *Id.*

We see no reason not to follow the Fourth Circuit's holding that the individual defendants enjoy the same immunity from suit as does the agency itself in this case. Indeed, it seems to us that WMATA's sovereign immunity from suit in state court, like its Eleventh Amendment immunity from suit in federal courts, immunizes to the same extent the individual defendants for acts committed within the scope of their official duties.[13] Certainly, appellant makes no argument to the contrary.

In sum, we hold that the circuit court properly dismissed appellant's lawsuit, in its entirety, because WMATA and the individual appellees are immune under the doctrine of state sovereign immunity from suit on the claims alleged in appellant's complaint.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**

---

12. The Fourth Circuit also held that FMLA does not validly abrogate a state's Eleventh Amendment immunity. *Lizzi,* 255 F.3d at 138.

13. When this issue was raised at the hearing on the motion to dismiss, appellant was unable to direct the circuit court to where in his complaint he had alleged that the individual defendants were acting outside the scope of their official capacities with respect to the events leading up to appellant's termination.