George S. TOELLER, Plaintiff,

v.

State of WISCONSIN DEPARTMENT OF CORRECTIONS, Defendant.

No. 03–C–826.

United States District Court,
E.D. Wisconsin.

Dec. 23, 2003.

Robert M Mihelich, Law Offices of Robert M. Mihelich, New Berlin, WI, for Plaintiff.

Richard Briles Moriarty, Wisconsin Department of Justice, Office of the Attorney General, Madison, WI, for Defendant.

## DECISION AND ORDER DENYING THE DEFENDANT'S MOTION TO DISMISS

GOODSTEIN, United States Magistrate Judge.

On August 29, 2003, the plaintiff filed a complaint against the State of Wisconsin Department of Corrections ("DOC"). The complaint charges the defendant with terminating his employment in retaliation for the plaintiff's assertion of his rights under the Family Medical Leave Act ("FMLA") 29 U.S.C. § 2615(a). The plaintiff sought medical leave due to his own serious health concerns. The defendant has filed a motion to dismiss, pursuant to Fed. R.Civ.P. 12(b)(6), arguing that the application of the Eleventh Amendment makes the DOC immune from a FMLA suit. Following its motion to dismiss, on December 3, 2003, the defendant filed a motion seeking to stay proceedings pending the resolution of its motion to dismiss. The motion to dismiss is fully briefed and ready for resolution. For purposes of the motion to dismiss, the allegations contained in the plaintiff's complaint are taken as true.

In its motion to dismiss, the defendant raises the narrow issue that the complaint should be dismissed because Congress did not validly abrogate the State's Eleventh Amendment immunity for claims arising out of the self-care/medical provisions of the FMLA. As such, the operation of the Eleventh Amendment makes the State immune from the plaintiff's claims.

■ The defendant relies primarily on the case of *Brockman v. Wyoming Dept. of Family Services*, 342 F.3d 1159, 1164–65

(10th Cir.2003) in support of the immunity argument. In response, the plaintiff argues that Congress did validly abrogate the State's immunity, arguing that this court should apply the reasoning set forth by the United States Supreme Court in *Nevada Department of Human Resources v. Hibbs*, 538 U.S. 721, 123 S.Ct. 1972, 155 L.Ed.2d 953 (2003), to the self-care/medical situation of the plaintiff. In reply, the defendant contends that *Hibbs* is a plurality opinion and, as such, cannot be extended to the present situation. Notwithstanding the splintered nature of its decision, five justices in *Hibbs* did join to form a majority opinion that does have a limited application to this case. So, where *Hibbs* is relevant, it will be controlling.

Turning to the Eleventh Amendment analysis, the court will review the history of the FMLA and Eleventh Amendment immunity. The FMLA allows qualified employees to take unpaid leave from their jobs in a number of circumstances: (1) for the birth and care of a child; (2) adoption or foster care of a child; (3) care for a spouse, child or parent who has a serious health condition; and (4) a serious health condition of the employee that makes the employee unable to perform the functions of the employee's position. 29 U.S.C. § 2612(a)(1)(A)-(D).

Prior to May, 2003, eight Courts of Appeals had held that although Congress intended in the FMLA to abrogate the states' Eleventh Amendment immunity from suits for money damages, it failed to validly do so. *Sharp v. Illinois Department of Corrections*, 2002 WL 441320 (N.D.Ill.) at *1 (listing decisions from the First, Second, Third, Fourth, Fifth, Sixth, Eighth and Eleventh Circuits). Then, on May 27, 2003, the United States Supreme Court issued its decision in *Hibbs*, in which it held that Congress validly abrogated the states' immunity with regard to the third

provision of the Act, the care for a spouse or family member. *Hibbs,* 123 S.Ct. at 1984.

Subsequently, on September 4, 2003, the Tenth Circuit held that even though *Hibbs* found that there was a valid abrogation of the states' immunity with regard to the family care provisions, Congress did not validly abrogate the states' immunity as to the self-care provision. *Brockman,* 342 F.3d at 1164–65.

Post *Hibbs,* the Seventh Circuit has not specifically addressed the question of whether Congress validly abrogated the states' immunity as to the self-care provision of the FMLA. This means that this court must decide whether it is persuaded by the reasoning in *Brockman,* as argued by the defendant, or whether it should extend the reasoning in *Hibbs* to the self-care/medical provision as argued by the plaintiff. The defendant submits that the *Brockman* decision is in line with the overwhelming weight of authority of the Courts of Appeals cases. However, those cases were decided before *Hibbs,* which leaves open the question as to how those circuits will now view state immunity in regard to the self-care provisions, in light of *Hibbs.* For example, the Fourth Circuit has since determined that Congress had effectively abrogated the states' Eleventh Amendment immunity against causes of actions based upon the FMLA. *Montgomery v. Maryland,* 72 Fed.Appx. 17, 19 (4th Cir.2003). The plaintiff in *Montgomery,* had brought her complaint under the self-care provisions of the FMLA, claiming retaliation by her employer in response to having taken FMLA leave. *See Montgomery v. Maryland,* 266 F.3d 334 (4th Cir. 2001).

■■■ The Eleventh Amendment states that "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state .…" U.S. Const. amend. XI. Such immunity is not absolute for Congress may abrogate the states' Eleventh Amendment immunity "if it makes its intention to abrogate unmistakably clear in the language of the statute and acts pursuant to a valid exercise of its power under § 5 of the Fourteenth Amendment." *Hibbs,* 123 S.Ct. at 1976. Section 5 of the Fourteenth Amendment states that "Congress shall have the power to enforce, by appropriate legislation, the provisions of this article." U.S. Const. amend. XIV. Congress may subject nonconsenting states to suit in federal court with a valid exercise of its § 5 power. *Nanda v. Bd. of Tr. of the Univ. of Ill.,* 303 F.3d 817, 823 (7th Cir.2002). Congress' power under § 5 is limited to enforcement; the Fourteenth Amendment does not give Congress the authority to determine what constitutes a constitutional violation. *Id.*

■■ When enforcing the Fourteenth Amendment, the appropriateness of the remedial measures created by Congress must be considered in light of the evil presented. *Id.* at 824. "If the scope of the remedy is broad, it must be justified by a proportionately pressing need." *Id.* at 827. Courts should look to the legislative history to determine proportionality and although the legislative history is not determinative of the proportionality inquiry, it is probably the most telling means of assessing the depth of the constitutional problem and the need for a congressional remedy. *Id.*

■ So, the issue in this case centers on the intent of Congress and the valid exercise of its authority. Both parties agree that Congress clearly intended to abrogate the states' immunity in actions under the family leave provisions of the FMLA for money damages against the states. They disagree as to Congressional intent and as

to the validity of its authority to abrogate the states' immunity for violations arising under the self-care provision of the FMLA.

First, what was the intention of Congress in enacting the Family and Medical Leave Act of 1993? The "FMLA aims to protect the right to be free from gender-based discrimination in the workplace." *Hibbs,* 123 S.Ct. at 1978; 29 U.S.C. § 2601(b)(4)-(5). Statutory classifications that distinguish between males and females are viewed with heightened scrutiny. *Id.* "For a gender-based classification to withstand such scrutiny, it must be substantially related to an important government objective." *Id.* Because the standard for demonstrating the constitutionality of a gender-based classification is more difficult to meet than the rational basis test, it is easier for Congress to show a pattern of state constitutional violations. *Hibbs,* 123 S.Ct. at 1982.

The legislative history indicates a number of concerns. Congress found that "[h]istorically, denial or curtailment of women's employment opportunities has been traceable directly to the pervasive presumption that women are mothers first and workers second. This prevailing ideology about women's roles has in turn justified discrimination against women when they are mothers or mothers to be."*Id.*(citing Joint Hearing 100).

When looking specifically at the self-care/medical leave provision, the concern expressed was that single parents, who in most cases are women, might lose their jobs if they were unable to work during the time of a serious health condition. S. Rep. 103-3 pt. 2, pp. 11–12, U.S.Code Cong. & Admin.News 1993, pp. 3, 13–15. The self-care/medical leave provision of the FMLA addresses both of these concerns. First, by creating a self-care provision, Congress extended FMLA protection to every employee, not just women and not just employees with families. For exam-

ple, without the self-care provision, employers might be inclined to hire single men without children, because these employees would be unlikely, if not less likely, to seek leave under the child or family leave provisions. So, by creating the self-care provision, Congress has attempted to preclude any incentive for an employer to hire a man over a woman because, regardless of sex or family status, all eligible employees are entitled to leave under the FMLA. And, at the same time, Congress has been able to address its concern about single mothers with serious illnesses by ensuring that they are entitled to leave for their own serious health condition. Based upon these findings, it is clear that Congress believed that there was a pervasive problem of gender discrimination in the workplace, one that specifically applied to both family and medical leave. As a result, it enacted the FMLA to remedy these problems.

Having determined that Congress recognized a significant problem, the court must look to see if the remedy, the FMLA, is proportionate to the problem. *Hibbs* is instructive in this inquiry. In *Hibbs,* the Supreme Court found that the FMLA's family leave provisions were a proportionate remedy to gender discrimination, which it found was a pervasive problem in the states. The *Hibbs* court noted that "the FMLA is narrowly targeted at the fault line between work and family—precisely where sex-based overgeneralization has been and remains strongest—and affects only one aspect of the employment relationship." *Id.* at 1983. The Court also noted that Congress inserted significant limitations in the FMLA, further demonstrating its exercise of a remedy proportionate to the problem. The Court recognized that the FMLA only allows for unpaid leave, that it applies only to employees who have worked for the employer for at least a year and provided

at least 1,250 hours of service within the last 12 months, that high-ranking employees or state elected officials and their staffs are not covered by the FMLA, and that the FMLA requires notice of foreseeable leave and that employers may require certification from the employee's health care provider. *Id.* at 1983–84. The Court said "Congress chose 'a middle ground, a period long enough to serve the needs of families' but not so long that it would upset 'the legitimate interests of employers.'" *Id.* at 1984. The same reasoning is applicable to the self-care/medical provision of the FMLA. And, like in *Hibbs,* this court finds that the FMLA is a proportionate remedy to the problem of gender discrimination, which Congress found existing in such circumstances.

The court concludes that Congress's enactment of the self-care/medical provision of the FMLA is a proper exercise of its remedial authority under § 5 of the Fourteenth Amendment. As such, this court further concludes that the Congress intended to, and validly exercised its authority, in abrogating the states' Eleventh Amendment immunity for claims arising out of the self-care/medical provision of the FMLA. The defendant's motion to dismiss will be denied.

**IT IS THEREFORE ORDERED** that the defendant's motion to dismiss based upon sovereign immunity is **denied.**

**IT IS FURTHER ORDERED** that the defendant's motion to stay proceedings is **denied**. A telephone status Rule 16 conference is scheduled for **January 26, 2004 at 8:30 A.M.** The parties shall submit their Rule 26(f) report by **January 16, 2004.** The court will place the call.

SO ORDERED.