862 A.2d 1017

Christopher T. LIZZI

v.

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, et al.**

No. 32, Sept. Term, 2004.

Court of Appeals of Maryland.

Dec. 9, 2004.

Reconsideration Denied Jan. 11, 2005.

Paul F. Evelius, Baltimore, for petitioner.

Gerard J. Stief, Associate General Counsel (Carol B. O'Keeffe, Acting General Counsel, Mark F. Sullivan, Deputy General Counsel, and Sonia A. Bacchus, Associate General Counsel, on the brief), Washington, D.C., for respondents.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

CATHELL, J.

This case concerns the viability of a lawsuit brought by Christopher T. Lizzi, petitioner, who, on August 27, 1999, filed a three-count complaint in the Circuit Court for Prince George's County alleging that respondents, the Washington Metropolitan Area Transit Authority ("WMATA") and seven individuals employed by WMATA,[1] unlawfully terminated petitioner's employment with WMATA: (1) in violation of the Family and Medical Leave Act of 1993[2] ("FMLA" or "the Act") (29 U.S.C. §§ 2601 et seq.); (2) in breach of contract; and (3) in violation of the Maryland Constitution.

On January 4, 2002, the circuit court ruled, pursuant to a hearing on a motion to dismiss, that, because of the United States Court of Appeals' decision in *Lizzi v. Alexander, et al.*, 255 F.3d 128 (4th Cir.2001), *cert. denied*, 534 U.S. 1081, 122 S.Ct. 812, 151 L.Ed.2d 697, *reh'g denied*, 535 U.S. 952, 122 S.Ct. 1352, 152 L.Ed.2d 254 (2002), Counts I and II of petitioner's complaint were barred by *res judicata* and therefore dismissed. On March 29, 2002, the circuit court also ruled that Count III in petitioner's complaint was barred both by *res judicata* and by sovereign immunity.

---

**1.** In his brief, petitioner characterizes and refers to these named employees as "supervisors."

**2.** As we shall discuss, *infra*, petitioner's FMLA claim is more specifically a claim relating to 29 U.S.C. § 2612(a)(1)(D) of the Act, otherwise known as the personal-leave provision. This provision states:

"**§ 2612. Leave requirement**

(a) In general

(1) Entitlement to leave

Subject to section 2613 of this title, an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12–month period for one or more of the following:

\* \* \*

(D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee."

On December 22, 2003, the circuit court's ruling was affirmed on appeal by the Court of Special Appeals of Maryland.[3] *Lizzi v. WMATA,* 156 Md.App. 1, 845 A.2d 60 (2003). Petitioner thereafter petitioned this Court for Writ of Certiorari. On June 11, 2004, we granted the petition. *Lizzi v. WMATA,* 381 Md. 674, 851 A.2d 593 (2004).

Petitioner presents the following questions for our review:

"I. Did the Court of Special Appeals err by failing to hold that, under the United States Supreme Court's holding in [*Nevada Department of Human Resources v.*] *Hibbs,* [538 U.S. 721, 123 S.Ct. 1972, 155 L.Ed.2d 953 (2003),] the FMLA abrogates any state sovereign immunity of WMATA and its employees?

II. Did the Court of Special Appeals err by holding that the WMATA Compact confers upon WMATA state sovereign immunity from FMLA claims?

III. Did the Court of Special Appeals err by holding that [petitioner] is not entitled to maintain an action under the Maryland Constitution (and this Court's decision in *Robinson v. Bunch* [, 367 Md. 432, 788 A.2d 636 (2002)]) against WMATA for its violations of the FMLA's substantive provisions?

IV. Did the Court of Special Appeals err by holding that WMATA's (supposed) state sovereign immunity 'transfers' to the Supervisors, thereby immunizing them from personal liability for FMLA and Maryland Constitution violations committed in the scope of their official duties?

V. [Can] WMATA [ ] be held liable for breach of contract if it violates a personnel policy incorporating the FMLA[?] [4]" [Alterations added.] [Footnote added.]

---

3. As we shall discuss, *infra,* the intermediate appellate court affirmed the dismissal of petitioner's suit, but it did so without addressing whether *res judicata,* an issue presented to it, barred petitioner's claims.

4. This fifth and final question was mentioned in petitioner's brief to this Court, but was not specifically included in his Petition for Writ of Certiorari.

Because we hold that *res judicata* effectively bars petitioner's FMLA claim, we do not address the remaining questions presented to this Court.

## I. Facts

WMATA is an interstate compact agency and instrumentality of Maryland, Virginia, and the District of Columbia and serves to operate the Metrobus and Metrorail systems in the Washington, D.C., metropolitan area. WMATA was created in 1966 with the consent of the United States Congress. *See* Washington Metropolitan Area Transit Authority Compact, Pub.L. No. 89–774, 80 Stat. 1324 (1966).

Petitioner was employed by WMATA as a bus wheelchair lift mechanic prior to his termination in September 1997. The termination was a result of petitioner's alleged misuse of sick days and vacation leave so as to be absent from his employment for extended periods of time. Petitioner contested his termination and first filed suit in the federal court system, alleging that his firing was in violation of the FMLA and naming WMATA and seven individual supervisors of WMATA as defendants in the suit. Petitioner subsequently filed the instant suit in the Circuit Court for Prince George's County.

## A. The Federal Court Proceedings

On August 7, 1998, petitioner first filed suit, based on the same facts and cause of action as the case *sub judice*, in the United States District Court for the District of Maryland. While petitioner's original complaint in the federal court action contained six counts, all but the count concerning WMATA's alleged violation of the FMLA were voluntarily dismissed by petitioner. The federal district court granted summary judgment on the remaining FMLA count in favor of WMATA, but allowed the suit to continue as against the named defendant supervisors in their individual capacities.

On appeal to the United States Court of Appeals for the Fourth Circuit, the federal appellate court affirmed the dismissal of WMATA but reversed with respect to the individual defendant supervisors, ordering that the supervisors be dis-

missed from the suit as well. *Lizzi v. Alexander*, 255 F.3d at 138. The Fourth Circuit stated that "[b]ecause sovereign immunity extends to WMATA, and because the claims against the WMATA employees are in reality claims against the agency itself, we affirm in part, reverse in part, and remand with directions to dismiss the action." *Id.* at 130.

Petitioner thereafter petitioned for a rehearing/rehearing en banc, both of which were denied by the Fourth Circuit on July 17, 2001. On January 7, 2002, the United States Supreme Court denied petitioner's Petition for Writ of Certiorari. *Lizzi v. WMATA*, 534 U.S. 1081, 122 S.Ct. 812, 151 L.Ed.2d 697, *reh'g denied*, 535 U.S. 952, 122 S.Ct. 1352, 152 L.Ed.2d 254 (2002).

### B. Maryland Court Proceedings

On August 27, 1999, more than a year subsequent to the filing of his federal claim, petitioner filed the instant action in the Circuit Court for Prince George's County. As stated, *supra*, petitioner's complaint, as amended, contained three counts. Petitioner's FMLA claim, his initial count, was identical to that advanced in the then-pending federal court action. Because of the pending federal court action, the circuit court ordered a stay of the state court action pending the decision by the Fourth Circuit in the federal court action.

After receiving a favorable decision by the Fourth Circuit in the federal action, WMATA filed a motion in the circuit court to (1) lift the stay in the state court action and (2) dismiss the entire action. On January 4, 2002, subsequent to a hearing on the motions, the circuit court dismissed Counts I (FMLA claim) and II (contract claim) of petitioner's complaint on the ground of *res judicata*. At a later hearing on March 29, 2002, the circuit court dismissed Count III (Maryland Constitution claim) of petitioner's complaint as being barred by both sovereign immunity and *res judicata*.[5]

---

5. A later hearing on Count III was needed because petitioner did not add this count to his complaint until he filed a second amended

On appeal to the Court of Special Appeals, the court was "asked to decide whether the circuit court correctly dismissed all three counts of [petitioner's] complaint on the ground of *res judicata* and, insofar as Count III is concerned, the additional ground of sovereign immunity." *Lizzi v. WMATA,* 156 Md. App. at 6, 845 A.2d at 63 (alteration added). While the intermediate appellate court did affirm the decision of the circuit court, it did so in relation to petitioner's Counts I and II "for reasons other than those relied upon by that court." *Id.* at 7, 845 A.2d at 63. In explaining its reasoning behind its departure from the reasons for dismissal given by the circuit court, the Court of Special Appeals stated:

> "It is not necessary that we decide whether *res judicata* bars [petitioner's] suit on the ground that the federal court ruled [respondents] immune. This is because we hold that WMATA and the individual [supervisors] are shielded from suit in state court by the doctrine of sovereign immunity, and that WMATA has not waived that immunity for claims such as those brought by [petitioner]."

*Id.* at 8, 845 A.2d at 64 (alterations added).

## II. Discussion

■ Petitioner initially contends that, under Maryland Rule 8–131 (2004), WMATA's claim that *res judicata* bars the claim *sub judice* from proceeding is improper insofar as it was not raised in either WMATA's response to petitioner's certiorari petition or in any cross-petition. That lack of action, petitioner claims now bars the issue from being raised in WMATA's brief to this Court. Maryland Rule 8–131 provides, in pertinent part:

**"Rule 8–131. Scope of review.**

(a) **Generally.** The issues of jurisdiction of the trial court over the subject matter and, unless waived under Rule 2–322, over a person may be raised in and decided by the appellate court whether or not raised in and decided by the

---

complaint, which was filed on the morning of the first motions hearing on January 4, 2002.

trial court. Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to guide the trial court or *to avoid the expense and delay of another appeal.*" [Emphasis added.]

The issue of *res judicata* was raised in and has been fully determined by the trial court. If, we were to determine that petitioner's other claims had merit, we would be required to remand this case to the Court of Special Appeals for it to determine the issue relating to *res judicata* and the determination of that court would in all likelihood be the subject of another Petition to this Court. Thus, we find it preferable to address the *res judicata* issue at this point, so as "to avoid the expense and delay of another appeal," as is intended under the language of Maryland Rule 8–131(a).[6] It would be a waste of judicial resources to remand the case, and the burden of resolving this issue, to the Court of Special Appeals for it to determine the issue when it would, in all probability, end up back here. Therefore, we shall proceed with an examination of whether *res judicata* does in fact bar petitioner's FMLA claim.

 *Res judicata* literally means "a thing adjudicated," and generally indicates "[a]n affirmative defense barring the same parties from litigating a second lawsuit on the same claim, or any other claim arising from the same transaction or series of transactions and that could have been—but was not—raised in the first suit." BLACK'S LAW DICTIONARY 1336–

---

**6.** Our decision to address the question of whether *res judicata* bars petitioner's claim is further bolstered by the fact that the circuit court based its dismissal of two of petitioner's counts solely on *res judicata*, and a third count because of both *res judicata* and the court's own finding of sovereign immunity. The issue was also extensively briefed in WMATA's brief before the Court of Special Appeals, as well as in WMATA's brief to this Court. Therefore, WMATA's *res judicata* defense cannot be said to have appeared out of thin air. It is not a surprise to petitioner. Additionally, petitioner responded to the issue in this Court by referring the Court to his briefing of this issue in the Court of Special Appeals.

37 (8th ed.2004). *See Alvey v. Alvey*, 225 Md. 386, 390, 171 A.2d 92, 94 (1961) (stating that "[t]he doctrine of *res judicata* is that a judgment between the same parties and their privies is a final bar to any other suit upon the same cause of action, and is conclusive, not only as to all matters that have been decided in the original suit, but as to all matters which with propriety could have been litigated in the first suit"); *see also Mackall v. Zayre Corp.*, 293 Md. 221, 228, 443 A.2d 98, 102 (1982) (stating that "if a proceeding between parties involves the same cause of action as a previous proceeding between the same parties, the principle of *res judicata* applies and all matters actually litigated or that could have been litigated are conclusive in the subsequent proceeding"). *Res judicata* is based "upon the judicial policy that the losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on issues raised, or that should have been raised." *Colandrea v. Wilde Lake Community Ass'n, Inc.*, 361 Md. 371, 391, 761 A.2d 899, 909 (2000).

In the case *sub judice*, WMATA claims that the Fourth Circuit's decision in *Lizzi v. Alexander, et al.*, 255 F.3d 128 (4th Cir.2001), effectively bars petitioner's present claims because of *res judicata*. In order to ascertain whether WMATA's contention is correct, we must first examine the extent of the Fourth Circuit's holding in *Lizzi*.

In its decision in *Lizzi*, the Fourth Circuit noted "at the outset that WMATA possesses Eleventh Amendment [7] immunity. The signatories of the [WMATA] compact intended to

---

**7.** The Eleventh Amendment to the United States Constitution states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." The United States Supreme Court has extended the states' Eleventh Amendment immunity to suits against a state by its own citizens. *See Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890); *see also Edelman v. Jordan*, 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974) (stating that the Supreme Court "has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State").

confer Eleventh Amendment immunity on WMATA." *Id.* at 132 (alteration added) (footnote added). The Fourth Circuit further stated that "WMATA is a state agency, subject to all the benefits and liabilities of a state itself, *including sovereign immunity.*" *Id.* (emphasis added).

In its discussion as to why the WMATA compact had not evidenced an intent to waive WMATA's sovereign immunity,[8] despite petitioner's contention that it did, the Fourth Circuit extensively examined virtually *all of the arguments that underlie petitioner's present claim* before this Court as to why the FMLA, specifically the personal-leave provision of 29 U.S.C. § 2612(a)(1)(D), should be found to abrogate WMATA's sovereign immunity. In fact, the only new wrinkle in petitioner's argument that makes for even the slightest difference in the case as it was presented to the Fourth Circuit and as it is now presented before this Court is petitioner's inclusion in his brief of the recent United States Supreme Court case of *Nevada Dep't of Human Resources v. Hibbs,* 538 U.S. 721, 123 S.Ct. 1972, 155 L.Ed.2d 953 (2003), which petitioner claims effectively overruled the Fourth Circuit's *Lizzi* decision.

With *Hibbs,* the Supreme Court had before it the opportunity to settle a disagreement among the federal courts of appeal as to whether there existed sovereign immunity of a state in a private action for damages under the FMLA.[9] In holding

---

8. An identical conclusion regarding the effect of the language of the WMATA compact was reached by the Court of Special Appeals in its decision below. *See Lizzi,* 156 Md.App. at 9–10, 845 A.2d at 65–66.

9. At the time of the Supreme Court's decision in *Hibbs,* only the Court of Appeals for the Ninth Circuit had held that a specific provision of the FMLA abrogated sovereign immunity, *see Hibbs v. Dep't of Human Resources,* 273 F.3d 844 (9th Cir.2001), while at least three of the federal circuit courts of appeal had held that *no section* of the FMLA contained a valid abrogation of state sovereign immunity. *See, e.g., Chittister v. Dep't of Community and Economic Dev.,* 226 F.3d 223 (3d Cir.2000); *Sims v. Univ. of Cincinnati,* 219 F.3d 559 (6th Cir.2000); *Townsel v. Missouri,* 233 F.3d 1094 (8th Cir.2000). As we discuss, *infra,* those decisions have since been overruled in part by *Hibbs,* as the Supreme Court has specifically found that the FMLA's family-leave provision, *see* 29 U.S.C. § 2612(a)(1)(C), does abrogate sovereign immunity.

that, notwithstanding state sovereign immunity, employees of the State of Nevada could recover money damages in federal court in the event of the state's failure to comply with the FMLA's family-leave provision, *see* 29 U.S.C. § 2612(a)(1)(C), the Supreme Court settled the question of whether a state could be sued in relation to alleged violations of the *family-leave provision* of the FMLA.[10] What the decision did not do, regardless of how vigorously petitioner claims otherwise, was provide that the *personal-leave provision* of the FMLA, *see* 29 U.S.C. § 2612(a)(1)(D), also allows for states to be sued when alleged violations of the personal-leave provision are asserted. Chief Justice Rehnquist, writing for the Court, made it clear that the *Hibbs* decision was limited in its scope to only the family-care provision of the FMLA. *See Hibbs,* 538 U.S. at 724, 123 S.Ct. at 1976 (stating that state employees may recover money damages "in the event of the State's failure to comply with the *family-care provision of the Act*") (emphasis added). In the entirety of the *Hibbs* opinion, never once does the Supreme Court discuss the personal-leave provision of the FMLA, the *only* provision at issue now before this Court, and its effect on sovereign immunity.

The fact that *Hibbs* does nothing to inhibit the *res judicata* effect of the Fourth Circuit's decision in *Lizzi* upon the case *sub judice* is supported by the Court of Appeals for the Tenth Circuit's post-*Hibbs* opinion in *Brockman v. Wyoming Dep't of Family Servs.,* 342 F.3d 1159 (10th Cir.2003), *cert. denied,* 540 U.S. 1219, 124 S.Ct. 1509, 158 L.Ed.2d 155 (2004). *Brockman* dealt with a Wyoming state employee who claimed that hostility from her supervisors had caused her to suffer from post-traumatic stress disorder which led to her taking leave from her employment. After exhausting her FMLA-provided 12

---

**10.** In reaching this holding, which is limited to the family-leave provision of the FMLA, the Supreme Court found that the impetus for the family-leave provision was to alleviate the effects of gender discrimination in the workplace. The Supreme Court stated that existing "state practices continue to reinforce the stereotype of women as caregivers," *Hibbs,* 538 U.S. at 738, 123 S.Ct. at 1983, and that the family-leave provision of the FMLA was enacted to combat such patterns of discriminatory stereotyping.

weeks of leave, Brockman returned to her employment but shortly thereafter requested an additional period of leave, which her employer was not willing to allow. The state agency thereafter terminated her employment. Brockman then sued the State of Wyoming and the state employees alleged to have created the hostile environment, claiming, *inter alia*, that the termination was in violation of the personal-leave provision of the FMLA. After the federal district court granted summary judgment to the defendants, Brockman appealed the decision to the Tenth Circuit, one of her arguments being that "sovereign immunity does not bar her claims under [ ] the FMLA...." *Brockman*, 342 F.3d at 1163.

Recognizing the recent Supreme Court decision in *Hibbs* and its effect as to only the family-care provision of the FMLA, the Tenth Circuit found that "the self-care provision in [29 U.S.C. § 2612(a)(1)(D)] *is not implicated by that decision.*" *Brockman*, 342 F.3d at 1164 (alteration added) (emphasis added). The Tenth Circuit stated that, while "the Supreme Court's analysis in *Hibbs* turned on the gender-based aspects of the FMLA's § 2612(a)(1)(C) [the family-leave provision] ... [t]he legislative history accompanying the passage of the FMLA reveals two motivations for the inclusion of the self-care provision," none of which was to prevent gender discrimination. *Id.* (alteration added). In clarifying this point, the federal court of appeals stated:

"First, Congress was attempting to alleviate the economic burdens to both the employee and to his or her family of illness-related job-loss. *See* S.Rep. No. 103–3, at 11 (1993), *reprinted in* 1993 U.S.C.C.A.N. 3, 13–14; H.R.Rep. No. 101–28(I), at 23 (1990). Second, Congress was attempting to prevent those with serious health problems from being discriminated against by their employers. *See* S.Rep. No. 103–3, at 12; H.R. Rep. 101–28(I), at 23. The legislative history does not, however, identify as the basis for subsection (D) a link between these two motivations and any

pattern of discriminatory stereotyping on the part of the states as employers."

*Id.*

We agree with the Tenth Circuit's decision in *Brockman* insofar as it relates to the effect that the Supreme Court's decision in *Hibbs* has on the personal-leave provision of the FMLA, *i.e.*, that it *does not have any effect* on that particular provision. The Fourth Circuit's holding in *Lizzi* as it relates to the FMLA personal-leave provision—that it is not a valid abrogation of state sovereign immunity—is not disturbed by the Supreme Court's opinion in *Hibbs* and effectively bars petitioner's present claims because of *res judicata. See Solley v. Big Spring State Hosp.*, 2004 WL 1553423 (N.D.Tex.2004) (federal district court finding that a pre-*Hibbs* federal appellate case holding that Congress could not waive a state's sovereign immunity as against FMLA personal-leave claims was not abrogated by the *Hibbs* decision, which only dealt with the family-leave provision of the FMLA); *Bryant v. Mississippi State University*, 329 F.Supp.2d 818, 822 (N.D.Miss.2004) (federal district court stating that "it would be utterly unreasonable to assume that the Supreme Court [in *Hibbs*] intended to make a broad sweeping approval of the FMLA's attempted abrogation of states' immunity in light of the *precise and specific analysis related wholly* to [the family-leave provision] and the court's carefully worded holding") (alterations added) (emphasis added).

■ There are post-*Hibbs* cases in the federal system that have held contrary to the cases we cite above. *See, e.g., Montgomery v. Maryland*, 72 Fed.Appx. 17, 19 (4th Cir.2003) (per curiam) (stating that, under *Hibbs*, "sovereign immunity does not protect the states in FMLA actions"); *Toeller v. Wisconsin Dep't of Corrections*, 296 F.Supp.2d 946 (E.D.Wis. 2003) (federal district court extending the reasoning in *Hibbs* to the personal-leave provision of the FMLA). In the present case the issue was finally litigated in the federal system. If the federal court was wrong, and we do not mean to say that it

was, its ruling is nonetheless binding in the instant case. Because *res judicata* is determinative in the present case it is not necessary for us to select between the conflicting positions of the several federal courts. We hold that *res judicata* effectively bars petitioner from relitigating his FMLA claim in the Maryland court system.

There ostensibly remains the issue of petitioner's state constitutional claims. At the Court of Special Appeals, that court identified the issue before it in relation to state constitutional claims as,

"IV. Whether appellant's state constitutional law claim is barred by limitations?"

At the circuit court the defendants argued that the state constitutional claims were barred by the doctrine of *res judicata* because, according to them, the appropriate provisions of the federal statute at issue permitted them to be brought in the federal district court so long as they arose out of the same factual situation. The defendants also argued that the state constitutional claim was time-barred as well. Their motion to dismiss that count was granted by the trial judge on immunity and *res judicata* grounds without any mention of limitations.

However, at the Court of Special Appeals the respondents argued, and petitioner responded to that argument in his reply brief, that the state constitutional claim was filed more than three years after the termination of petitioner and thus was untimely filed and that the issue had been raised at the trial court (as, in fact, it was). Petitioner argued below (at both courts) that the claim was timely filed because it related back to the prior counts.

At the time the state constitutional count was added, counts substantially similar to the prior counts filed in the state court had already been resolved and dismissed in the federal courts and we have held that the preclusive effect of the federal courts' actions was *res judicata* and that those counts, accordingly, could not be maintained in the state action. Thus, with our holding based upon *res judicata* principles that those

counts were properly dismissed the third count stands alone. And it was untimely filed.

### III. Conclusion

We hold that petitioner's present claim concerning the ability of the personal-leave provision of the FMLA to overcome the sovereign immunity of this State is barred due to the *res judicata* effect of the Fourth Circuit's opinion in *Lizzi v. Alexander, et al.,* 255 F.3d 128 (4th Cir.2001), *cert. denied,* 534 U.S. 1081, 122 S.Ct. 812, 151 L.Ed.2d 697, *reh'g denied,* 535 U.S. 952, 122 S.Ct. 1352, 152 L.Ed.2d 254 (2002). Therefore, while we affirm the decision of the Court of Special Appeals, the reasoning behind our affirmance is not identical to that of the intermediate appellate court but is based on *res judicata.* Because of our holding, there is no need to address petitioner's remaining questions.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**