892 A.2d 497

**DEPARTMENT OF NATURAL RESOURCES**

v.

**James HELLER.**

**No. 23, Sept.Term., 2005.**

Court of Appeals of Maryland.

Feb. 9, 2006.

---

to benefit as individuals from the wrongdoing alleged in the complaint").

Paul J. Cucuzzella, Asst. Atty. General (J. Joseph Curran, Jr., Atty. General of Maryland, and Rachel L. Eisenhauer, Asst. Atty. General, on brief), Annapolis, for Petitioner.

Robin R. Cockey (Cockey, Brennan & Maloney, P.A., on brief), Salisbury, for Respondent.

Argued Before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

BATTAGLIA, Judge.

This case arises out of an administrative hearing addressing a complaint filed by James Heller against the Department of Natural Resources pursuant to the Maryland Whistleblower Statute, Md.Code (1993, 1997 Repl.Vol., 2001 Supp.), § 5–301,

*et seq.* of the State Personnel and Pensions Article, alleging retaliatory disciplinary action. The Department of Natural Resources ("DNR") requests this Court to review the decision of the Court of Special Appeals which found, in contradiction to the findings of the Administrative Law Judge, that James Heller made protected disclosures regarding alleged fiscal improprieties and that the Administrative Law Judge erroneously precluded Respondent from introducing evidence relevant to the merits of the underlying sexual harassment claim. We reverse.

## Facts

On October 18, 1998, Respondent began working as the manager of the Somers Cove Marina ("Somers Cove") in Crisfield, Maryland. At that time, he was informed by his direct supervisor, Joseph Ward, Park Service Supervisor, and Mr. Ward's supervisor, Daryl DeCesare, Regional Manager for the Eastern Region, Department of Natural Resources, that the marina had posted a loss the previous fiscal year and that some of his responsibilities were to identify the reasons for the loss and to make the marina profitable.

From November 1998 through April 2001, Mr. Heller, Mr. Ward, and Mr. DeCesare exchanged numerous memoranda concerning the Somers Cove budget and the use of funds generated by the marina. Respondent discovered that DNR made several payments to the Great Hope Golf Course ("Great Hope"), totaling $53,600, pursuant to an agreement between DNR and Somerset County by which DNR would receive discounted vouchers for rounds of golf at Great Hope to be sold at Somers Cove for a profit. Respondent also noted that in fiscal year ("FY") 1998, $25,859 was charged to Somers Cove to purchase a truck for the marina, but sometime thereafter, the truck was transferred to Janes Island State Park where Mr. Ward served as Park Manager. Respondent also found that $80,000 in revenue generated by Somers Cove had not been credited to Somers Cove's operating account.

In FY 1998 and 1999, various summaries of receipts and corresponding cash register tapes, credit card receipts, and

bank deposit tickets were found at Somers Cove, evidencing moneys which had not been credited to Somers Cove's revenue account but had remained in a DNR clearing account until the supporting documentation was received and processed. When this occurred, Somers Cove was credited with the entirety of the revenue.

On January, 18, 1999, Mary Taylor was hired by DNR to work at Somers Cove as an office secretary to report directly to Respondent. On April 9, 2001, Ms. Taylor met with Mr. Ward and expressed her feelings of discomfort about working alone with Respondent because she felt threatened and intimidated and was being sexually harassed. Mr. Ward instructed her to put her concerns in writing; Ms. Taylor did so in a letter dated April 11, 2001. Mr. Ward forwarded this letter to Mr. DeCesare.

On April 14, 2001, Mr. DeCesare and Mr. Ward met with Respondent and informed him that he could not work in the same office as Ms. Taylor and that Mr. Ward would be assuming Ms. Taylor's daily supervision. Approximately two weeks later, Mr. DeCesare temporarily reassigned Respondent to Pocomoke River State Park and forwarded Ms. Taylor's complaint to DNR's Equal Employment Opportunity Office ("EEO Office").

William Bias, Chief of the Office of Fair Practice, DNR, investigated Ms. Taylor's claims of sexual harassment. In his report dated May, 30, 2001, Mr. Bias concluded that there was probable cause to conclude that Ms. Taylor had been discriminated against because of her gender, after having interviewed Mr. Ward, Mr. DeCesare, Lieutenant Colonel Alphonso Hawkins, Assistant Superintendent, State Forest and Park Service ("SFPS"), Lindley Sterling, a seasonal employee at Somers Cove and Ms. Taylor's coworker, Ms. Taylor, and Respondent. Although Respondent denied Ms. Taylor's allegations, Mr. Bias found that Ms. Taylor was credible and that Respondent was not. He recommended the following actions be taken by management: (1) transfer Respondent to another location; (2) issue Respondent a written reprimand for his actions empha-

sizing the seriousness of the offense and DNR's zero tolerance policy with respect to sexual harassment; (3) require Respondent to attend sexual harassment training; and (4) advise Respondent not to retaliate against Ms. Taylor. Mr. Bias also noted that the Office of Fair Practice would conduct periodic reviews to ensure that the suggested corrective actions had been implemented.

On June 21, 2001, Colonel Richard Barton, Superintendent of the State Forest and Park Service and Respondent's appointing authority, issued a written reprimand to Respondent based upon Mr. Bias's determination of probable cause. Respondent was permanently transferred from Somers Cove, required to attend sexual harassment training, prohibited from having any contact with Ms. Taylor and prohibited from visiting Somers Cove. Respondent was not demoted in grade and did not incur any loss of pay.

Respondent filed an administrative appeal of the disciplinary action with the head of his unit at DNR and the Secretary of Budget and Management, pursuant to Sections 11–109 and 11–110 of the State Personnel and Pensions Article.[1] He

---

1. Maryland Code (1993, 1997 Repl.Vol., 2001 Supp.), Section 11–109 of the State Personnel and Pensions Article provides in pertinent part:

 (b) *Limitations.*—(1) Except as provided in paragraph (3) of this subsection, an employee in the skilled service or the professional service may appeal a disciplinary action taken while the employee is on probation only on the basis that the action was illegal or unconstitutional.

 (2) The employee has the burden of proof in an appeal under this subsection.

 (3) The limitations in paragraphs (1) and (2) of this subsection do not apply to an employee in the skilled service or the professional service who is on probation following a promotion or reinstatement.

 (c) *Appeal to head of principal unit—Procedure.*—(1) An employee's representative may file with the head of the principal unit a written appeal of a disciplinary action that states, to the extent possible, the issues of fact and law that the employee believes would warrant rescinding the disciplinary action.

 Maryland Code (1993, 1997 Repl.Vol., 2001 Supp.), Section 11–110 of the State Personnel and Pensions Article provides in pertinent part:

 (a) *Procedure.*—(1) Within 10 days after receiving a decision under § 11–109 of this subtitle, an employee or an employee's representative may appeal the decision in writing to the Secretary.

thereafter settled and dismissed the appeal prior to it being heard by the Office of Administrative Hearings ("OAH"). Pursuant to that settlement, Respondent agreed to a permanent assignment to another state park and retained his ability to seek redress through a "whistleblower" action.

In his separate "whistleblower" action under Section 5–301 *et seq.* of the State Personnel and Pensions Article ("Whistleblower Act"),[2] filed with the Secretary of the Department of Budget and Management ("DBM"), Respondent alleged that the June 21, 2001 disciplinary action was not a consequence of the probable cause finding of sexual harassment, but was retaliatory for the protected disclosures that Respondent alleged to have made regarding purported fiscal irregularities in the implementation of Somers Cove's operating budget. Specifically, Respondent listed several discrete allegations of fiscal improprieties and illegalities that he asserted he had raised

---

(2) An appeal shall state, to the extent possible, the issues of fact and law that are the basis of the appeal.

(b) *Action required by Secretary after receiving appeal.*—Within 30 days after receiving an appeal, the Secretary or designee shall:
 (1)(i) mediate a settlement between the employee and the unit; or
 (ii) refer the appeal to the Office of Administrative Hearings; and
 (2) advise the employee in writing of the Secretary's action.

**2.** Maryland Code (1993, 1997 Repl.Vol., 2001 Supp.), §§ 5–301 *et seq.* of the State Personnel and Pensions Article provides in pertinent part:
 § 5–302. Effect of Subtitle.
 (b) *Effect on personnel actions.*—This subtitle does not prohibit a personnel action that would have been taken regardless of a disclosure of information.
 § 5–305. Disclosure of information— Reprisal prohibited.
 Subject to the limitations of § 5–306 of this subtitle, a supervisor, appointing authority, or the head of a principal unit may not take or refuse to take any personnel action as a reprisal against an employee who:
 (1) discloses information that the employee reasonably believes evidences:
 (i) an abuse of authority, gross mismanagement, or gross waste of money;
 (ii) a substantial and specific danger to public health or safety; or
 (iii) a violation of law; or
 (2) following a disclosure under item (1) of this section seeks a remedy provided under this subtitle or any other law or policy governing the employee's unit.

previously with SFPS management. He stated that he had discovered and reported to SFPS management that:

(1) $80,000 in revenues generated by Somers Cove in FY 1998 were not credited by DNR to Somers Cove's operating account, but rather were diverted by DNR for other departmental uses;

(2) approximately $24,000 from Somers Cove's budget was used to purchase a vehicle that DNR subsequently and improperly transferred for use at Janes Island State Park; and,

(3) DNR improperly transferred $40,000 from the Somers Cove budget to the Great Hope Golf Course, a facility owned and operated by the Somerset County Commissioners.

The DBM denied his whistleblower claim; Respondent appealed to the Office of Administrative Hearings ("OAH"), and an evidentiary hearing was held by Administrative Law Judge ("ALJ") Lorraine Fraser on January 14 and 15, 2003. Respondent's case, in direct and rebuttal, consisted of his own testimony, as well as the testimonies of State Senator James Lowell Stoltzfus and Delegate Charles Andrew McClenahan in his case in chief. DNR presented the testimonies of Gregory J. Cunningham, DNR's Director of Audit and Management Review and Colonel Barton.

Respondent testified that when he was hired by DNR as manager of Somers Cove, he was informed of a $197,000 net operating loss posted by Somers Cove for FY 1998 and that he tried to determine why Somers Cove was not generating profits. According to Respondent, this investigation led him to focus his attention on the three issues raised in his complaint: the payments to Great Hope, the purchase of the truck which was later transferred to Janes Island, and the diversion of Somers Cove revenues by DNR for other departmental purposes. He stated that he reached the conclusion that the revenues generated by Somers Cove, known as "attainment," were being improperly diverted by DNR or were not being credited by DNR to the Somers Cove account.

Respondent testified that in late 1998, he brought these issues to the attention of Mr. Ward, Mr. DeCesare, and Pam Lunsford, the assistant to the SFPS budgetary officer. To corroborate his assertion that he had made his concerns known to his superiors, Respondent presented a January 13, 2000 memorandum addressed to Mr. Ward and Mr. DeCesare, which detailed the budgetary issues at Somers Cove and asserted that the marina was being used as a "cash cow." In the memorandum, Respondent noted that although the marina was producing revenues in FY 1999 in excess of $600,000, Somers Cove's operating budget was only $405,000. Similar statements were made in a February 18, 2000 memorandum to Jim Dunmyer, DNR Assistant Secretary, which was also introduced into evidence by Respondent. Respondent also offered, and the ALJ received, several other documents, which included: a February 14, 2000 memorandum from himself to Mr. Ward and Mr. DeCesare, in which he alleged that "Annapolis had taken $223K for FY 99's attainment"; Respondent's performance evaluation signed July 19, 2000 stating that if DNR would comply with the applicable statute governing the Somers Cove Improvement Fund, it would enable Respondent to better perform his duties; and a November 6, 2000 memorandum from Respondent to Mr. Ward in which Respondent raised questions about the Somers Cove budget.

During Respondent's case in chief, he attempted to introduce evidence impeaching the credibility of the allegations made by Ms. Taylor, which went beyond what was contained in Mr. Bias's report, as part of his effort to prove that the sexual harassment claims were pretextual. ALJ Fraser explained, at that time, ruling on an objection by DNR to the admission of a document which purported to relate to Ms. Taylor's conduct in the workplace, that the context of the whistleblower claim was not the appropriate proceeding in which to challenge the merits of the underlying sexual harassment claim. ALJ Fraser stated that Respondent could only challenge the sexual harassment charge in an appeal of the disciplinary action. Also, when, during the direct examination of Respondent, Respondent's counsel asked whether he had

sexually harassed Ms. Taylor, ALJ Fraser again sustained DNR's objection to the question.

Respondent also presented the testimony of Senator James Lowell Stoltzfus and Delegate Charles Andrew McClenahan, both of whom stated their belief that Respondent had done a good job as manager of the marina. Both Senator Stoltzfus and Delegate McClenahan testified that Mr. DeCesare told them that Respondent was removed because of financial mismanagement of Somers Cove.

In response to the evidence adduced by Respondent, DNR presented testimony from Gregory Cunningham, who testified as an accounting expert, and Colonel Barton, who instituted the disciplinary action against Respondent. Mr. Cunningham, as part of the investigation into Respondent's whistleblower complaint, had performed an internal review of the specific allegations of fiscal mismanagement raised by Respondent. Mr. Cunningham also prepared a report of his findings, which was admitted into evidence. In both the report and his testimony, Mr. Cunningham opined that there was no merit to any of Respondent's allegations.

With respect to the allegation that DNR had unlawfully diverted $80,000 from Somers Cove for other departmental purposes, Mr. Cunningham testified that DNR had not diverted these funds but that the funds had been held in DNR's clearing account pending DNR's receipt of certain Somers Cove credit card receipts and deposit tickets as proof of revenue. As stated by Mr. Cunningham, under DNR's accounting procedures, transmittal of the receipts and deposit tickets is a prerequisite for DNR to transfer the funds from the clearing account where they are initially deposited to the Somers Cove revenue account. Mr. Cunningham noted that the entirety of Somers Cove's revenue was transferred from the clearing account to the Somers Cove revenue account immediately after DNR received the necessary documentation from Somers Cove.

Regarding Respondent's allegation that DNR improperly transferred a vehicle purchased with Somers Cove funds to

Janes Island, Mr. Cunningham stated that, in accordance with long-standing DNR policy, the Secretary of DNR and SFPS management have the authority to assign vehicles based on need. Moreover, Mr. Cunningham testified that he had learned through interviews with SFPS management that Respondent had permitted the vehicle to be transferred because there was another vehicle available for his use at Somers Cove.

Concerning the allegations regarding the payments made to Great Hope, Mr. Cunningham explained that the monetary transfers from Somers Cove to Great Hope were completed pursuant to a lawful Memorandum of Agreement ("MOA") executed in 1995 between DNR and Great Hope. The MOA was not renewed when it expired in 1998 because it was not financially advantageous to Somers Cove. Mr. Cunningham also addressed Respondent's allegation that DNR was using Somers Cove as a "cash cow" because the budget did not reflect the entirety of the marina's revenue from the fiscal year immediately prior by explaining that DNR establishes the budgets for its units two years in advance. Mr. Cunningham also testified that DNR did not divert the excess Somers Cove revenue, but rather placed the funds in a reserve account solely for Somers Cove's use. He further stated that the current balance in the account was approximately $250,000.

DNR also presented evidence that Respondent could not have had a reasonable belief in the merit of his allegations concerning the illegal diversion of funds from Somers Cove. Colonel Barton testified that on various occasions when Respondent first began his employment at Somers Cove, he spoke with Respondent and provided explanations for the budgeting issues identified by Respondent. Colonel Barton also stated that when Respondent was hired, he spoke with Respondent about the structure of Somers Cove's operating budget and how the excess funds generated by the marina were placed in a reserve account. DNR also introduced memoranda from Mr. Ward to Respondent dating from 1999 and 2000 in which Mr. Ward explained that Somers Cove was

operating in the red because of significant deficit spending in previous years and urging Respondent to focus on operating Somers Cove within its budget. Moreover, DNR introduced a memorandum from February 2000 in which Respondent acknowledged that the budget was prepared two years in advance.

Addressing the contention that the sexual harassment claim was pretextual, Colonel Barton testified that he based his decision to discipline Respondent only on the probable cause findings contained in Mr. Bias's report. He also stated that he did not play any role in the initiation of the claim against Respondent, did not personally investigate the claim, and had no knowledge that Respondent had previously asserted that Ms. Taylor had made inappropriate advances toward him. On cross-examination, when asked whether he knew if Mr. Ward or Mr. DeCesare had encouraged Ms. Taylor to pursue the harassment charges, Colonel Barton stated that his knowledge was limited to that contained in Mr. Bias's report and that from the report he knew that Mr. Ward had told Ms. Taylor to document her problems in writing and advised Ms. Taylor of the proper procedure for filing a complaint with DNR's EEO.

With respect to the decision to discipline Respondent, Colonel Barton testified that the decision was his alone and that he did not consult with any of his subordinates or Respondent's supervisors prior to determining the proper action. He also stated that he did not seek advice from his superiors other than to obtain their consent in the discipline. Colonel Barton asserted that his conversations with Respondent concerning the budgetary issues at Somers Cove did not influence his decision to discipline Respondent in any way.

Cross-examination of Colonel Barton initially focused on the merits of the underlying sexual harassment charge. Respondent's counsel asked Colonel Barton what Respondent had done to violate the State's sexual harassment policy. Once again, the ALJ sustained an objection and explained that the merits of the sexual harassment claim were not at issue in the whistleblower case, although she remarked that Respondent

would be permitted to introduce evidence that Colonel Barton's decision was based on something other than Mr. Bias's probable cause finding. Respondent's counsel did not question Colonel Barton further as to his knowledge of the sexual harassment allegations other than to confirm that Colonel Barton did not personally investigate the claim.

During re-direct of Colonel Barton, ALJ Fraser admitted Mr. Bias's report into evidence on the condition that it was not admitted for the truth of Ms. Taylor's allegations, but rather solely as evidence of what Colonel Barton relied upon when he decided to discipline Respondent.

In rebuttal, Respondent once again testified. Counsel asked him if he knew whether Mr. Ward or Mr. DeCesare had investigated allegations that Respondent had previously raised concerning Ms. Taylor's conduct towards him to which DNR objected. Respondent's counsel then proffered that Respondent would testify that prior to Ms. Taylor's complaint in April of 2001, Respondent had complained to Messrs. Ward and DeCesare that Ms. Taylor had acted inappropriately toward him and had used profanity in the workplace. As counsel proffered, Respondent would have further testified that in response to Respondent's allegations, Mr. Ward and Mr. DeCesare told him not to pursue complaints against Ms. Taylor or she would do the same against him.

Also, as part of his proffer, Respondent's counsel identified eight documents which collectively evidenced that: Respondent had cautioned Ms. Taylor on several occasions in 2000 on maintaining an unprofessional demeanor in the workplace; Respondent had informed Messrs. Ward and DeCesare in 2000 about Ms. Taylor's alleged improper conduct; and, Mr. Ward informed Respondent that he should be aware that Ms. Taylor might file a claim against him. Although ALJ Fraser sustained DNR's objection to the admissibility of the documents, she noted that the documents introduced as part of the proffer, with the exception of a October 13, 2000 memorandum in which Mr. Ward warned Respondent that Ms. Taylor might file charges against him, had already been admitted into

evidence because they were admitted in conjunction with Mr. Bias's report. The October document was admitted thereafter without objection and Respondent rested his case.

On May 27, 2003, ALJ Fraser issued her opinion. The ALJ found that Respondent had failed to meet his burden of proof that he was transferred in reprisal for his disclosure that funds were being improperly diverted from Somers Cove for other uses. In particular, ALJ Fraser noted that Respondent testified that he informed Mr. Ward, Mr. DeCesare, Pam Lunsford, and James Dunmyer of fiscal wrongdoing, but he could not corroborate his assertion that he in fact made those specific disclosures to those individuals. Moreover, ALJ Fraser noted that Respondent's testimony as to the disclosures was vague and that he could not recall specific dates or times and what was said and by whom. ALJ Fraser also found that Respondent was not a credible witness because he lied about informing a member of the public about the alleged fiscal improprieties. Furthermore, ALJ Fraser determined that Respondent never disclosed the information to an individual in a position to address the problem. Thus, ALJ Fraser concluded that Respondent's disclosures were not protected.

Furthermore, the ALJ found that Colonel Barton was a credible witness when he testified that he based his decision to discipline Respondent solely on Mr. Bias's probable cause report and did not consider Respondent's allegations of budgetary or fiscal mismanagement and that Respondent failed to introduce evidence to the contrary. Also, based on Mr. Cunningham's testimony regarding the merit of Respondent's budgetary concerns, ALJ Fraser found that Respondent's allegations of fiscal impropriety were meritless. ALJ Fraser ultimately concluded that DNR did not violate Section 5–305 of Maryland's Whistleblower Statute.[3]

---

3. Maryland Code (1993, 1997 Repl.Vol., 2001 Supp.), Section 5–305 of the State Personnel and Pensions Article provides in pertinent part:

Subject to the limitations of § 5–306 of this subtitle, a supervisor, appointing authority, or the head of a principal unit may not take or

Respondent filed a petition for judicial review in the Circuit Court for Somerset County citing three grounds for reversal of the ALJ's decision: the ALJ's finding that Respondent did not make a protected disclosure was contrary to law and contradicted by undisputed evidence; the ALJ's refusal to allow Respondent to introduce evidence that the sexual harassment claim was specious and pretextual; and, the ALJ's requirement that Respondent prove that his disclosures were well-founded as opposed to whether they were based on reasonably held beliefs. Judge J. Owen Wise examined ALJ Fraser's decision and determined that she was not in error in finding that Respondent did not make a protected disclosure and that Respondent was not disciplined in reprisal for his alleged disclosures. Moreover, Judge Wise found that Respondent had relinquished his right to challenge the underlying sexual harassment claim when he settled his disciplinary appeal such that Mr. Heller could not collaterally attack it through his whistleblower claim. Judge Wise concluded that the ALJ did not erroneously preclude Respondent from litigating the merits of the sexual harassment claim.

Thereafter, Respondent filed his notice of appeal to the Court of Special Appeals. In a reported opinion, the Court of Special Appeals reversed the decision of the ALJ and the Circuit Court's affirmance of that decision. The Court of Special Appeals disagreed with the ALJ's conclusion that Respondent's allegations of fiscal impropriety were not protected disclosures. The intermediate appellate court also held that Respondent reasonably believed that he was reporting a violation by DNR officials of the statute governing DNR's budgetary practices. The Court of Special Appeals also determined that the ALJ erred by prohibiting Respondent from

refuse to take any personnel action as a reprisal against an employee who:

(1) discloses information that the employee reasonably believes evidences:

(i) an abuse of authority, gross mismanagement, or gross waste of money;

(ii) a substantial and specific danger to public health or safety; or

(iii) a violation of law ...

challenging the merits of the underlying sexual harassment claim. On April 11, 2005, DNR filed a petition for writ of certiorari and presented this Court with the following questions, which we have reformulated for clarification purposes:

1. Did the ALJ erroneously determine that Respondent did not make protected disclosures as defined by Maryland's Whistleblower Statute?

2. Should the ALJ have permitted Respondent to introduce evidence challenging the merits of Ms. Taylor's sexual harassment allegations, where the ALJ determined such evidence to be irrelevant to the question of whether the agency decision maker committed an act of reprisal against Respondent and where the merits of Ms. Taylor's allegations had previously been resolved in a settlement of a disciplinary appeal filed by Respondent? [4]

On June 9, 2005, we granted the petition and issued the writ. *Department of Natural Resources v. Heller*, 387 Md. 462, 875 A.2d 767 (2005).

We conclude that ALJ Fraser's determination that Respondent's allegations regarding alleged fiscal impropriety did not constitute protected disclosures under the Maryland Whistleblower Act, is supported by substantial evidence and is not premised on an erroneous interpretation of the law. More-

---

4. The questions set forth in the petition for certiorari, as formulated by Petitioner DNR, are as follows:

1. Where the ALJ specifically found that Mr. Heller lied under oath and that he was not a credible witness, did the Court of Special Appeals exceed its scope of review when it found, as a matter of fact, that, at the times Mr. Heller purportedly raised allegations that Somers Cove revenues were being unlawfully diverted by DNR, Mr. Heller reasonably believed that he was alleging actual violations of law?

2. Did the Court of Special Appeals impermissibly usurp the functions of the administrative fact finder by finding that the ALJ should have permitted Mr. Heller to introduce evidence challenging the merits of Ms. Taylor's sexual harassment allegations, where the ALJ determined such evidence to be irrelevant to the question of whether the agency decision maker committed an act of reprisal against Mr. Heller and where the merits of Ms. Taylor's allegations had previously been resolved in a settlement of a disciplinary appeal filed by Mr. Heller?

over, we hold that ALJ Fraser did not erroneously exclude Respondent's proffered evidence relating to the merits of the underlying sexual harassment claim. Therefore, we reverse the decision of the Court of Special Appeals.

## Standard of Review

Section 10–222 of the Maryland Administrative Procedure Act, Md.Code (1984, 2002 Repl.Vol.), § 10–222 of the State Government Article, delineates that a court, upon judicial review of an administrative agency's decision, may decide to:

(1) remand the case for further proceedings;

(2) affirm the final decision; or

(3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision:

(i) is unconstitutional;

(ii) exceeds the statutory authority or jurisdiction of the final decision-maker;

(iii) results from an unlawful procedure;

(iv) is affected by any other error of law;

(v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or

(vi) is arbitrary and capricious.

Md.Code (1984, 2004 Repl.Vol.), § 10–222(h) of the State Government Article.

In *Maryland Aviation Administration v. Noland,* 386 Md. 556, 571–72, 873 A.2d 1145, 1154–55 (2005), Judge Eldridge, writing for this Court, thoroughly examined the standard of review of an adjudicatory decision by an administrative agency, stating:

A court's role in reviewing an administrative agency adjudicatory decision is narrow, *United Parcel v. People's Counsel,* 336 Md. 569, 576, 650 A.2d 226, 230 (1994); it 'is limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised

upon an erroneous conclusion of law.' *United Parcel,* 336 Md. at 577, 650 A.2d at 230. *See also* Code (1984, 1995 Repl.Vol.), § 10–222(h) of the State Government Article; *District Council v. Brandywine Enterprises, Inc.,* 350 Md. 339, 349, 711 A.2d 1346, 1350–51 (1998); *Catonsville Nursing v. Loveman,* 349 Md. 560, 568–69, 709 A.2d 749, 753 (1998).

In applying the substantial evidence test, a reviewing court decides 'whether a reasoning mind reasonably could have reached the factual conclusion the agency reached.' *Bulluck v. Pelham Wood Apts.,* 283 Md. 505, 512, 390 A.2d 1119, 1123 (1978). *See Anderson v. Dep't of Public Safety,* 330 Md. 187, 213, 623 A.2d 198, 210 (1993). A reviewing court should defer to the agency's fact-finding and drawing of inferences if they are supported by the record. *CBS v. Comptroller,* 319 Md. 687, 698, 575 A.2d 324, 329 (1990). A reviewing court ' "must review the agency's decision in the light most favorable to it; . . . the agency's decision is prima facie correct and presumed valid, and . . . it is the agency's province to resolve conflicting evidence" and to draw inferences from that evidence.' *CBS v. Comptroller, supra,* 319 Md. at 698, 575 A.2d at 329, quoting *Ramsay, Scarlett & Co. v. Comptroller,* 302 Md. 825, 834–35, 490 A.2d 1296, 1301 (1985). *See Catonsville Nursing v. Loveman, supra,* 349 Md. at 569, 709 A.2d at 753 (final agency decisions 'are *prima facie* correct and carry with them the presumption of validity').

\* \* \*

Even with regard to some legal issues, a degree of deference should often be accorded the position of the administrative agency. Thus, an administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts. *Lussier v. Md. Racing Commission,* 343 Md. 681, 696–97, 684 A.2d 804, 811–12 (1996), and cases there cited; *McCullough v. Wittner,* 314 Md. 602, 612, 552 A.2d 881, 886 (1989) ('The interpretation of a statute by

those officials charged with administering the statute is . . . entitled to weight'). Furthermore, the expertise of the agency in its own field should be respected. *Fogle v. H & G Restaurant*, 337 Md. 441, 455, 654 A.2d 449, 456 (1995); *Christ v. Department of Natural Resources*, 335 Md. 427, 445, 644 A.2d 34, 42 (1994) (legislative delegations of authority to administrative agencies will often include the authority to make 'significant discretionary policy determinations'); *Bd. of Ed. For Dorchester Co. v. Hubbard*, 305 Md. 774, 792, 506 A.2d 625, 634 (1986) ('application of the State Board of Education's expertise would clearly be desirable before a court attempts to resolve the' legal issues).

*Id.* at 571–72, 873 A.2d at 1154–55, quoting *Board of Physician Quality Assurance v. Banks*, 354 Md. 59, 67–69, 729 A.2d 376, 380–81 (1999).

### Discussion

DNR argues that for Respondent to prevail in a whistle-blower action, he must show that the disciplinary action was a reprisal against him for his allegations of illegality or impropriety which he reasonably believed to be true and made in the context of a "protected disclosure." The Department asserts that the ALJ's determination that the disciplinary action taken against Respondent was not done in reprisal for Respondent's allegations of fiscal impropriety is supported by substantial evidence in the record and is not premised on an error of law. Moreover, DNR contends that the ALJ did not commit an error of law in excluding Respondent's proffered evidence relating to the merits of the underlying sexual harassment claim, because the evidence was irrelevant to Colonel Barton's motivation for disciplining Respondent. Any evidence, which Colonel Barton was not aware of at the time of the disciplinary action, according to DNR, was properly excluded. Furthermore, DNR argues that the factual issue as to whether the disciplinary action was justified based on the merits of Ms. Taylor's allegations and the findings of the probable cause report are not the proper focus of a whistle-

blower hearing, but rather, should have been raised in an appeal of the disciplinary decision.

Conversely, Respondent argues that the Court of Special Appeals correctly rejected the ALJ's conclusion that the sexual harassment claim was not pretextual because the conclusion was based on errors of law, one of which was the improper exclusion of evidence concerning the merits of the underlying sexual harassment claim, which would prove that the claim was a pretext. Moreover, Respondent contends that the ALJ's conclusions that Respondent was not disciplined in reprisal are not factual issues, but rather are legal conclusions and as such, are not entitled to the significant deference afforded her decision under the substantial evidence rule. Respondent also asserts that there was abundant evidence in the record to establish his reasonable belief in the validity of his complaints of fiscal impropriety and also that the complaints were well-founded.

■ To maintain a claim of retaliation under Maryland's Whistleblower Statute, Respondent had to establish that he engaged in a whistleblowing activity by making a protected disclosure under Maryland Code (1993, 1997 Repl.Vol., 2001 Supp.), Section 5–305 of the State Personnel and Pensions Article, which provides in pertinent part:

> Subject to the limitations of § 5–306 of this subtitle, a supervisor, appointing authority, or the head of a principal unit may not take or refuse to take any personnel action as a reprisal against an employee who:
>
> (1) discloses information that the employee reasonably believes evidences:
>
> (i) an abuse of authority, gross mismanagement, or gross waste of money;
>
> (ii) a substantial and specific danger to public health or safety; or
>
> (iii) a violation of law;

and based on the protected disclosure, DNR took or failed to take a personnel action.

Maryland's Whistleblower Statute is derived from the whistleblower provisions of the Civil Service Reform Act ("CSRA"). Federal protection of government employees who made certain disclosures, which were generally embarrassing to the government, was first enacted in the Civil Service Reform Act of 1978. *Montgomery v. Eastern Correctional Institution,* 377 Md. 615, 627, 835 A.2d 169, 176–77 (2003). The CSRA "detailed a host of 'prohibited practices,' actions which are prohibited to be taken against employees." *Id.,* 835 A.2d at 177, quoting *Spruill v. Merit Systems Protection Bd.,* 978 F.2d 679, 682 (Fed.Cir.1992). In 1989, Congress passed the Whistleblower Protection Act ("WPA"), Pub.L. Nos. 101–12, 103 Stat. 16 (1989), which provided additional protection for federal employees from retaliatory action due to whistleblowing activities. *Id.* The provisions of the WPA are set forth at 5 U.S.C. § 2302(b)(8), and provide in pertinent part:

(b) Any employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority—

\* \* \*

(8) take or fail to take, or threaten to take or fail to take, a personnel action with respect to any employee or applicant for employment because of—

(A) any disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences—

(i) a violation of any law, rule, or regulation, or

(ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety,

if such disclosure is not specifically prohibited by law and if such information is not specifically required by Executive order to be kept secret in the interest of national defense or the conduct of foreign affairs.

The language used in Section 5–305 of the State Personnel and Pensions Article is similar to that found in 5 U.S.C.

§ 2302(b)(8). Because we have minimal case law interpreting the terms of the Maryland Whistleblower statute, we have stated that Maryland courts should look to the federal courts applying the Federal Whistleblower Protection Act because the purpose and language of the statutes are substantially similar. *See Montgomery,* 377 Md. at 629, 835 A.2d at 178 ("where the purpose and language of a federal statute are substantially the same as that of a later state statute, interpretations of the federal statute are ordinarily persuasive"), quoting *Fioretti v. Maryland State Bd. of Dental Examiners,* 351 Md. 66, 75–76, 716 A.2d 258, 262 (1998).

■ Under Maryland law, for a statement to be considered a protected disclosure it must satisfy three elements: the statement must disclose information that the employee reasonably believes discloses an abuse of authority, gross mismanagement, gross waste of money, a danger to the public health or safety, or a violation of law. *See* Md.Code (1993, 1997 Repl.Vol., 2001 Supp.), § 5–305 of the State Personnel and Pensions Article. If the disclosure fails to satisfy any one of the statutory elements, it is not considered a protected disclosure for whistleblower purposes. *See Montgomery,* 377 Md. at 625, 835 A.2d at 175.

■ "[A]n additional element to the first factor is that the disclosure [must] evidence an intent to raise an issue with a higher authority who is in a position to correct the alleged wrongdoing." *Hooven–Lewis v. Caldera,* 249 F.3d 259, 276 (4th Cir.2001); *Willis v. Dept. of Agriculture,* 141 F.3d 1139, 1143 (Fed.Cir.1998); *Carr v. Social Security Admin.,* 185 F.3d 1318, 1326 (Fed.Cir.1999) ("The purpose of the WPA is to encourage disclosures of wrongdoing to persons who may be in a position to act to remedy it."). The second element to prevail on a claim under Maryland's Whistleblower Statute requires the employee to prove a causal connection between the disclosure and the personnel action. *Hooven–Lewis,* 249 F.3d at 276 ("The second factor for a claim under the [Whistleblower Protection Act] is common to all actions for retaliation, and is in essence a requirement of a causal connection");

*Willis,* 141 F.3d at 1142 (stating that an employee must show that the protected disclosure was made and was a contributing factor in the personnel action).

 A whistleblower action by the employee intended to overturn a personnel action also will succeed only if the employee shows by a preponderance of the evidence that the protected disclosure was a "contributing factor" in the decision to take the personnel action. *See Willis,* 141 F.3d at 1143; Md.Code (1993, 1997 Repl.Vol., 2001 Supp.), § 5–302 of the State Personnel and Pensions Article ("This subtitle does not prohibit a personnel action that would have been taken regardless of a disclosure of information."). In this regard, the evidentiary requirements of a whistleblower action utilize the burden-shifting paradigm applicable to employment discrimination claims as first set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In this vein, the employee first bears the burden of establishing that he made a protected disclosure and was subsequently subjected to an adverse personnel action, after which the employer will only escape liability by proving that the employer would have taken the same personnel action in the absence of the protected disclosure. *See Carr,* 185 F.3d at 1322.

In the present case, Respondent asserted before ALJ Fraser that his allegations concerning the unlawful diversion of Somers Cove revenue for other DNR uses should be considered "protected disclosures" under Section 5–305 because he reasonably believed that he was disclosing evidence of a violation of law by DNR. Based on the evidence presented at the administrative hearing, ALJ Fraser determined that Respondent's allegations could not be considered protected disclosures under the Whistleblower Act because:

[t]he only evidence presented at the hearing to show [Respondent] disclosed that $80,000 in marina revenues from FY 1998 was diverted by DNR to other uses; $24,000 from the marina's FY 1998 budget was used to purchase a vehicle that was assigned to Mr. Ward at Jane's Island State Park; and $40,000 from the marina's FY 1998 budget was diverted

by DNR to the Great Hope Golf Course is [Respondent's] own testimony.

It is unclear to me why [Respondent] did not call any witnesses to corroborate his having made these disclosures. Moreover, [Respondent's] failure to produce any meaningful supporting documentation leads me to conclude that none exists.

[Respondent's] sole reliance upon his own uncorroborated testimony to prove his case is problematic. His testimony was vague as to specific dates, times, what was said and by whom. Also, I note the lack of any specific reference to the three identified alleged disclosures in the numerous memoranda between [Respondent] and Mr. Ward and Mr. DeCesare.

ALJ Fraser also found that reporting wrongdoing allegedly committed by "Annapolis" to his immediate supervisor and his immediate supervisor's supervisor does not constitute making a protected disclosure under the terms of the Whistleblower Statute.

Respondent's complaints to Mr. Ward and Mr. DeCesare addressed policies and practices established by DNR budgeting authorities. As previously stated, Respondent, for his allegations to be considered protected disclosures under the law, must make his disclosures to individuals in a position to remedy the wrongful actions. *Hooven–Lewis,* 249 F.3d at 276; *Willis,* 141 F.3d at 1143; *Carr,* 185 F.3d at 1326 ("The purpose of the WPA is to encourage disclosure of wrongdoing to persons who may be in a position to act to remedy it."). The ALJ, as part of her analysis of whether Respondent's disclosures should be considered protected under Maryland's Whistleblower Statute, properly considered whether the allegations were made to individuals in a position to take action to correct the allegedly illegal actions. Therefore, we find that ALJ Fraser's determination that Respondent did not make his disclosures to individuals in a position to correct the wrongdoing is not premised on an error of law.

Moreover, we determine that the ALJ's finding that Mr. Ward and Mr. DeCesare were not individuals in a position to remedy the alleged wrongdoing is supported by substantial evidence. We have explicated the concept of substantial evidence:

In applying the substantial evidence test, a reviewing court decides whether a reasoning mind reasonably could have reached the factual conclusion the agency reached. A reviewing court should defer to the agency's fact-finding and drawing of inferences if they are supported by the record. A reviewing court must review the agency's decision in the light most favorable to it[, and] the agency's decision is prima facie correct and presumed valid.

*Board of Physician Quality Assurance v. Mullan,* 381 Md. 157, 172, 848 A.2d 642, 651 (2004), quoting *Banks,* 354 Md. at 68, 729 A.2d at 380–81 (citations omitted). ALJ Fraser's finding that Mr. Heller's allegations concerned wrongdoing by officials in "Annapolis," and that as such, revealing the wrongdoing to Mr. Ward and Mr. DeCesare did not constitute disclosing the information to individuals in a position to remedy the alleged wrongdoing, is supported by the memoranda admitted as evidence during the hearing. Because the alleged illegal actions were being taken by Mr. Ward's and Mr. DeCesare's superiors at DNR, we find that a reasoning mind reasonably could have reached the factual conclusion that Mr. Ward and Mr. DeCesare were not individuals who could correct the alleged wrongdoing. Thus, we find that the ALJ's conclusion is supported by substantial evidence.

Furthermore, the ALJ's conclusion that Respondent did not make protected disclosures is premised on her determination that Respondent was not a credible witness. We give great deference to the agency's assessment of the credibility of the witnesses. *Schwartz v. Md. Dept. of Natural Resources,* 385 Md. 534, 554, 870 A.2d 168, 180 (2005). Because, as ALJ Fraser noted, Respondent's testimony comprised the majority of his case, the fact that he was found not to be credible, when viewed in conjunction with his inability to produce evidence corroborating his alleged disclosures to individuals beyond

Messrs. Ward and DeCesare, provides substantial evidence in support of ALJ Fraser's holding that Respondent did not make the alleged protected disclosures.

■ Respondent also argues that ALJ Fraser erroneously excluded evidence concerning the merits of the underlying sexual harassment claim. He contends that he should have been permitted to introduce such evidence as part of his showing that the reasons for his disciplinary action were pretextual. We disagree.

■■ The determination of whether evidence offered is relevant during a hearing before an ALJ from the Office of Administrative Hearings is entrusted to the sound discretion of the presiding ALJ. *See* Md.Code (1984, 1995 Repl.Vol., 2001 Supp.), § 10–213(d) of the State Government Article ("The presiding officer may exclude evidence that is: (1) incompetent; (2) irrelevant; (3) immaterial; or (4) unduly repetitious"). As stated in Maryland Rule 5–401, " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The main issue in this case is whether the sexual harassment claim was a pretext for disciplining Mr. Heller for his disclosures. Where there are allegations of pretext, "[i]t is not our province to decide whether the reason [provided by the employer for the employment action] was wise, fair, or even correct, ultimately so long as it was truly the reason." *Dugan v. Albemarle County School Board,* 293 F.3d 716, 722 (4th Cir.2002), quoting *DeJarnette v. Corning Inc.,* 133 F.3d 293, 299 (4th Cir.1998); *see also Pollard v. Rea Magnet Wire Co.,* 824 F.2d 557, 559 (7th Cir.1987) (stating that an honestly explained reason that is ill-informed or ill-considered or poorly founded is not a pretext). The focus of the inquiry is the perception of the employer. *Evans v. Technologies Applications & Service, Co.,* 80 F.3d 954, 960–61 (4th Cir.1996), citing *Smith v. Flax,* 618 F.2d 1062, 1067 (4th Cir.1980). *See also Braithwaite v. Timken Co.,* 258 F.3d 488, 494 (6th Cir.2001) (stating that employer's belief in

the proffered reason for the employment action must be judged based upon the "facts that were before it at the time the decision was made"). Thus, the only evidence that is relevant to Colonel Barton's motivations in disciplining Mr. Heller would have been confirmatory of information known to Colonel Barton at the time of the decision.

Colonel Barton stated that he based his decision to discipline Mr. Heller solely on the contents of Mr. Bias's probable cause report. Because Mr. Bias is DNR's EEO officer, Colonel Barton reasonably relied on the particularized facts contained therein. *See Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir.1998) (stating that "the employer must be able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made").

ALJ Fraser did not preclude Respondent from challenging Colonel Barton's testimony about his motive for the disciplinary action and permitted him to introduce evidence that Colonel Barton in reality based his decision on the allegedly protected disclosures. In Respondent's case in chief, Senator Stoltzfus and Delegate McClenahan both testified that, in separate conversations with Mr. DeCesare, Mr. DeCesare indicated that Respondent had been removed from the marina due to budgetary and financial management issues. ALJ Fraser found that because Mr. DeCesare was not the individual responsible for deciding to discipline Mr. Heller, what he believed is irrelevant to whether the sexual harassment claim was pretextual. Moreover, Respondent was permitted to elicit from Colonel Barton that he had no "personal knowledge" regarding the allegations in Ms. Taylor's complaint or Mr. Bias's report. ALJ Fraser provided Mr. Heller with ample opportunity to adduce evidence that Colonel Barton was motivated to discipline him based upon Mr. Heller's disclosures of fiscal wrongdoing, and Mr. Heller failed to do so. Respondent failed to produce any evidence impeaching Colonel Barton's assertion that Mr. Bias's report was the sole basis for his decision to discipline Mr. Heller. A reasonable mind could have concluded that DNR's disciplinary action against Respondent was not done in reprisal. Therefore, we determine that

ALJ Fraser's holding is supported by substantial evidence and must be upheld.

## Conclusion

We conclude that ALJ Fraser's determination that Respondent's allegations regarding alleged fiscal impropriety did not constitute protected disclosures under the Maryland Whistleblower Act to be supported by substantial evidence and not to be premised on an erroneous interpretation of the law. Moreover, we hold that ALJ Fraser did not erroneously exclude Respondent's proffered evidence relating to the merits of the underlying sexual harassment claim. Therefore, we shall reverse the decision of the Court of Special Appeals.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR SOMERSET COUNTY. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.*

RAKER, Judge, dissenting, in which BELL, Chief Judge, and HARRELL, Judge, join:

I would affirm the judgment of the Court of Special Appeals remanding the case to the Office of Administrative Hearings ("OAH") for a *de novo* hearing, and clarify that, to the extent that certain language in the lower court opinion could be interpreted as making factual findings, it does not do so, and that the OAH on remand would not be bound by these apparent findings.

The majority opinion offers two grounds for reversal, neither of which is persuasive. The majority's holding that the Administrative Law Judge ("ALJ") at respondent's hearing did not err in concluding that respondent failed to make a protected disclosure because his allegations were not in fact made to persons with authority to act upon them is both procedurally and substantively erroneous. It is procedurally

erroneous because petitioner did not raise this issue in its petition to this Court for a writ of certiorari. Further, even if this issue were properly before the Court, the ALJ's conclusion should not be upheld.

The majority's holding that the ALJ did not err in excluding as irrelevant respondent's proffered evidence concerning the merits of the sexual harassment charges against him is likewise erroneous. The proffered evidence was relevant because it tends to show that petitioner's stated reason for the employment action taken against respondent was a pretext for retaliation against respondent.

I.

In its petition for a writ of certiorari, petitioner presented the following two questions for our review:

"1. Where the ALJ specifically found that Mr. Heller lied under oath and that he was not a credible witness, did the Court of Special Appeals exceed its scope of review when it found, as a matter of fact, that, at the times Mr. Heller purportedly raised allegations that Somers Cove revenues were being unlawfully diverted by DNR, Mr. Heller reasonably believed that he was alleging actual violations of law?

"2. Did the Court of Special Appeals impermissibly usurp the functions of the administrative fact finder by finding that the ALJ should have permitted Mr. Heller to introduce evidence challenging the merits of Ms. Taylor's sexual harassment allegations, where the ALJ determined such evidence to be irrelevant to the question of whether the agency decision maker committed an act of reprisal against Mr. Heller and where the merits of Ms. Taylor's allegations had previously been resolved in a settlement of a disciplinary appeal filed by Mr. Heller?"

The majority opinion, purporting to reformulate these questions "for clarification purposes," restated petitioner's questions as follows:

"1. Did the ALJ erroneously determine that Respondent did not make protected disclosures as defined by Maryland's Whistleblower Statute?

"2. Should the ALJ have permitted Respondent to introduce evidence challenging the merits of Ms. Taylor's sexual harassment allegations, where the ALJ determined such evidence to be irrelevant to the question of whether the agency decision maker committed an act of reprisal against Respondent and where the merits of Ms. Taylor's allegations had previously been resolved in a settlement of a disciplinary appeal filed by Respondent?"

Maj. op. at 164, 892 A.2d at 506. Although the majority's restatement of the second question plausibly could be characterized as a reformulation simply for clarification purposes, its restatement of the first question cannot. Petitioner's first question presents the issue of whether the Court of Special Appeals exceeded its scope of review by making a factual finding that respondent reasonably believed he was alleging actual violations of law when he made his allegations concerning the fiscal management of Somers Cove. It does not raise the issue of whether the Court of Special Appeals erred in setting aside the ALJ's finding that respondent did not make a protected disclosure because the DNR officials he made his allegations to were not in a position to remedy the alleged wrongdoing. The majority's reformulation of the first question, however, materially alters the meaning of the first question so that it does encompass this issue, recasting the question as raising the issue of the propriety of all of the ALJ's conclusions that bear on the issue of whether respondent made a protected disclosure, even though petitioner simply sought to raise the issue of whether the Court of Special Appeals erred by making factual findings at the appellate level.

Maryland Rule 8–131(b)(1) governs the scope of review in the Court of Appeals when the Court is reviewing a case where there has been a prior appellate decision. It provides as follows:

"Unless otherwise provided by the order granting the writ of certiorari, in reviewing a decision rendered by the Court

of Special Appeals or by a circuit court acting in an appellate capacity, *the Court of Appeals ordinarily will consider only an issue that has been raised in the petition for certiorari or any cross-petition and that has been preserved for review by the Court of Appeals.* Whenever an issue raised in a petition for certiorari or a cross-petition involves, either expressly or implicitly, the assertion that the trial court committed error, the Court of Appeals may consider whether the error was harmless or non-prejudicial even though the matter of harm or prejudice was not raised in the petition or in a cross-petition."

Md. Rule 8–131(b)(1) (emphasis added). Although the use of "ordinarily" in the language of the Rule vests this Court with discretion to consider issues not raised in the petition or cross-petition for a writ of certiorari, the Court has exercised this discretion carefully and explicitly, and has departed from the general rule set down in Rule 8–131(b)(1) only when it found compelling reasons to do so. *See, e.g., Anne Arundel County Bd. of Educ. v. Norville,* 390 Md. 93, 103–05, 887 A.2d 1029, 1035–36 (2005) (deciding case on grounds of res judicata even though issue of res judicata was not raised in petition for writ of certiorari because doing so would promote judicial economy and avoid unnecessary expense by obviating the need for a separate appeal); *Lizzi v. WMATA,* 384 Md. 199, 203, 205–06, 862 A.2d 1017, 1020, 1021–22 (2004) (same); *Matthews v. Amberwood,* 351 Md. 544, 580–81, 719 A.2d 119, 136–37 (1998) (considering issue not raised in petition for writ of certiorari because otherwise the case would have to be remanded to the Court of Special Appeals for consideration of the issue, which would be contrary to "the interests of judicial economy and expedition"). In *Wynn v. State,* 351 Md. 307, 718 A.2d 588 (1998), we explained the scope of the discretion under Rule 8–131(b)(1) to consider issues not raised in a petition for a writ of certiorari as follows:

"The word 'ordinarily' [in Rule 8–131(b)(1) ] does indicate that there are exceptions. Nevertheless, neither the use of the word 'ordinarily' in Rule 8–131(b) nor the principle embodied in the rule, has been treated as granting a general

discretion to reach an issue whenever the Court so desires ... Instead, we have held that the 'exceptions' to the principle embodied in Rule 8–131(b) are limited to 'extraordinary circumstances.'"

*Id.* at 322–23, 718 A.2d at 596 (quoting *State v. Broberg*, 342 Md. 544, 573, 677 A.2d 602, 616 (1996) (Eldridge, J., dissenting)) (citations and quotations omitted). Accordingly, the Court has often declined to exercise its discretion under Rule 8–131(b)(1) to consider an issue not raised in the petition for a writ of certiorari, even when the parties have raised the issue in their briefs. *See, e.g., Purnell v. State*, 375 Md. 678, 686 n. 5, 827 A.2d 68, 73 n. 5 (2003); *Clark v. Elza*, 286 Md. 208, 219 n. 4, 406 A.2d 922, 928 n. 4 (1979).

In the case *sub judice*, the majority has not offered any reason at all, let alone a compelling reason, for departing from the general rule that issues not raised in a petition for a writ of certiorari should not be considered by the Court. Nor does it seem that it could offer such a reason. The issue of whether the ALJ's finding that respondent did not make a protected disclosure because the DNR officials he made his allegations to were not in a position to remedy the alleged wrongdoing was premised on a correct legal standard is not an issue that would be raised on remand and result in a separate appeal because the Court of Special Appeals has already decided this issue. Thus, the interests of judicial economy and avoiding unnecessary expense that the Court found sufficient to justify exercising its discretion to consider an issue not raised in a petition for a writ of certiorari in *Norville, Lizzi,* and *Matthews* are not implicated in the present case.

In the absence of a compelling reason to depart from the general rule of Rule 8–131(b)(1), this case does not present any "extraordinary circumstances" that would warrant the Court's exercising its discretion under Rule 8–131(b)(1) to consider the issue addressed by the majority. To the contrary, the majority's consideration of the issue is, under the circumstances, unfair to the respondent. The issue was plainly raised in and addressed by the Court of Special Appeals. *See Heller v. DNR*, 161 Md.App. 299, 321–22, 868 A.2d 925,

937–38 (2005). Although the Court of Special Appeals's resolution of this issue was unfavorable to petitioner, it elected not to raise the issue in its petition for a writ of certiorari. Under these circumstances, respondent was entitled to rely on the petitioner's apparent decision not to pursue this issue in proceedings before this Court.

Furthermore, as to the merits of the issue, even if the issue of whether the ALJ's finding that respondent did not make a protected disclosure because the DNR officials he made his allegations to were not in a position to remedy the alleged wrongdoing were properly before the Court, it is not apparent that it should be resolved as it is by the majority. In interpreting the Maryland Whistleblower Law, Md.Code (1994, 2004 Repl.Vol., 2005 Cum.Supp.), § 5–301 *et seq.* of the State Personnel and Pensions Article, the Court has relied on federal caselaw interpreting the federal Whistleblower Protection Act, Pub.L. No. 101–12, 103 Stat. 16 (1989) (amending 5 U.S.C. § 2302(b)(8)). *See Montgomery v. E.C.I.*, 377 Md. 615, 629, 835 A.2d 169, 178 (2003) (cases interpreting federal Whistleblower Protection Act highly persuasive in interpreting Maryland Whistleblower Law). Accordingly, the majority relies on three federal cases to support its position that in order for a disclosure to be a protected disclosure, the disclosure must be made to a person who actually has the authority to remedy the alleged wrongdoing: *Hooven–Lewis v. Caldera*, 249 F.3d 259 (4th Cir.2001), *Carr v. Social Security Administration*, 185 F.3d 1318 (Fed.Cir.1999), and *Willis v. Department of Agriculture*, 141 F.3d 1139 (Fed.Cir.1998). *See* maj. op. at 23–26. None of these cases, however, support the majority's position.

Regarding the issue of to whom a disclosure must be made in order for it to be a protected disclosure, *Hooven–Lewis* said the following:

> "An additional element to the first factor [i.e., the protected disclosure element] is that the disclosure *evidence an intent* to raise an issue with a higher authority who is in a position to correct the alleged wrongdoing"

*Hooven–Lewis,* 249 F.3d at 276 (emphasis added) (citing *Carr,* 185 F.3d at 1326; *Willis,* 141 F.3d at 1143). Similarly, in *Willis,* the court held that there was no protected disclosure because the employee's "disclosures did not *evidence an intent* to raise the issue with higher authorities who were in a position to correct the alleged wrongdoing." *Willis,* 141 F.3d at 1143 (emphasis added). Despite the fact that *Hooven– Lewis* and *Willis* merely require that the employee's disclosures be such that they show that the employee *intended* to bring the alleged wrongdoing to the attention of officials with the authority to remedy it, the majority goes much further and turns this intent requirement into a factual requirement that the employee must make "his disclosures to individuals in a position to remedy the disclosures" in order for the disclosures to be protected disclosures. Maj. op. at 172, 892 A.2d at 511 (citing *Hooven–Lewis,* 249 F.3d at 276; *Willis,* 141 F.3d at 1143).

*Carr* does not lend any more support to the majority's position than *Hooven–Lewis* or *Willis.* In *Carr,* the court stated that " '[t]he purpose of the Whistleblower Protection Act is to encourage disclosure of wrongdoing to persons who may be in a position to act to remedy it.' " *Carr,* 185 F.3d at 1326 (quoting *Horton v. Dep't of the Navy,* 66 F.3d 279, 282 (Fed.Cir.1995)). Importantly, *Carr* says that the purpose is to encourage disclosure to those "who *may* be in a position to act to remedy" the wrongdoing, not to those who are in fact in a position to remedy the wrongdoing.

The majority offers no reason for its departure from *Hooven–Lewis* and *Willis* on this issue. The majority's requirement that an employee must make a disclosure to someone who in fact is in a position to remedy the alleged wrongdoing substantially weakens the Maryland Whistleblower Law, in frustration of its evident purpose. The Maryland Whistleblower Law prohibits reprisals "against an employee who ... discloses information that the employee *reasonably believes* evidences" one of the enumerated types of wrongdoing. State Pers. & Pen. Art. § 5–305 (emphasis added). Thus, as the text of the statute makes plain, the Maryland Whistleblower Law was intended to protect employees from reprisals for

allegations of wrongdoing that, although reasonably believed to be correct by the employee, are nonetheless mistaken. *See also Horton*, 66 F.3d at 283 (interpreting federal Whistleblower Protection Act, holding that the statute "requires only that the whistleblower had a reasonable belief" of wrongdoing). The majority's requirement that the employee's disclosure be made to someone who in fact has authority to remedy the alleged wrong has the practical effect of removing the protection of the Maryland Whistleblower Law in cases where an employee makes reasonable, but mistaken, allegations of wrongdoing. This is so because, in many instances, when an employee makes a reasonable allegation of wrongdoing that, as a matter of fact, turns out to be incorrect, there will be no person at all who is in a position to act to remedy the allegation of wrongdoing, precisely because there is no actual wrong to remedy.[1]

## II.

The ALJ committed an error of law in excluding the evidence pertaining to the merits of Taylor's sexual harassment allegations and in refusing to permit respondent to cross-examine Barton regarding the allegations. Assuming the evidence was not irrelevant, respondent had a right to offer it in the hearing. *See* Md.Code (1984, 2004 Repl.Vol., 205 Cum. Supp.), § 10–213(f)(2) of the State Government Article. Likewise, he had a right to cross-examine Barton on the issue of the merits of the sexual harassment allegations if such cross-examination was relevant to a contested issue in the case. State Gov't Art., § 10–213(f)(3). Evidence pertaining to the merits of the Taylor's sexual harassment claim was relevant in the hearing because it was relevant to the contested issue of

---

1. In effect, then, the majority's position places a heavy burden on employees contemplating disclosures of wrongdoing to determine in advance of the disclosure whether their allegations are in fact correct. This is particularly troublesome given that, in many instances, a particular employee may not have access to all the information that would be necessary to determine with certainty whether any wrongdoing took place.

whether petitioner's claim that Barton was reassigned because of the allegations and the subsequent finding that they were supported by probable cause was really a pretext for retaliating against him for his allegations that petitioner had committed fiscal improprieties. *See Rogers v. Dep't of Def. Dependents Schs.*, 814 F.2d 1549, 1555 (Fed.Cir.1987) (under federal Whistleblower Protection Act, employee must show that "the independent grounds for the adverse action did not outweigh the retaliatory motive").

Petitioner argues that respondent's excluded evidence was not relevant because none of it concerned "facts and circumstances of Ms. Taylor's allegations that were not known to . . . Barton at the time he took the disciplinary action." The majority apparently adopts this argument, holding that "the only evidence that is relevant to Colonel Barton's motivations in disciplining Mr. Heller would have been confirmatory of information known to Colonel Barton at the time of the decision." Maj. op. at 175, 892 A.2d at 513. This argument fails. The majority and petitioner base this claim on the assumption that Barton's testimony that he reassigned respondent based solely on the investigative report concluding that there was probable cause that Taylor's allegations is correct. *See id.* But this assumption assumes that the contested issue in the case as to the predominant motivation for Barton's transfer of respondent has already been resolved in petitioner's favor. As such, it is question-begging to make this assumption in deciding whether respondent's proffered evidence is relevant to the issue of Barton's predominant motivation for respondent's transfer.[2] Respondent's evidence, to the

---

2. The majority relies on *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir.1998) to support its position that Colonel Barton's testimony that he simply relied on Bias's report in deciding whether to discipline respondent provides grounds for the ALJ's exclusion of the evidence on relevance grounds. *See* maj. op. at 175, 892 A.2d at 513. *Smith*, however, does not support the majority's position. The issue before the court in *Smith* was whether to adopt the "honest belief" rule for deciding whether an employer's proffered reason for an employment action is a pretext applied by the Seventh Circuit in cases under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq. Smith*, 155

extent it showed that Taylor's allegations were meritless, would tend to make it less likely that Barton acted on the basis of the report, and thus more likely that he acted in retaliation. Therefore, it is relevant. *See* Md. Rule 5–401 (evidence is relevant if it has "*any tendency* to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence" (emphasis added)).

If an administrative agency adjudicatory decision is premised on an erroneous conclusion of law, it is subject to reversal. State Gov't Art. § 10–222(h)(3)(iv); *Montgomery*, 377 Md. at 625, 835 A.2d at 175–76 (2003). The decision of the ALJ was premised in part on her finding that there was no reprisal, and this finding in turn was premised on her erroneous legal conclusion that respondent's proffered evidence was not relevant.[3] Therefore, reversal is proper.

---

F.3d at 806. The honest belief rule adopted by the Seventh Circuit provides that "so long as the employer honestly believed in the proffered reason given for its employment action, the employee cannot establish pretext even if the employer's reason is ultimately found to be mistaken, foolish, trivial, or baseless." *Id.* (citing *Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 676 (7th Cir.1997)).

In *Smith*, the Sixth Circuit rejected the Seventh Circuit's approach. Rather, the court held that "in order for an employer's proffered non-discriminatory basis for its employment action to be considered honestly held, the employer must be able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made." *Smith*, 155 F.3d at 807. Further, even if the employer presents evidence tending to show this, the employee should still have the opportunity to present evidence to the contrary. *Id.* This is so because " 'if the employer made an error too obvious to be unintentional, perhaps it had an unlawful motive for doing so.' " *Id.* (quoting *Fischbach v. Dist. of Columbia Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C.Cir.1996)). Thus, if the *Smith* approach were to be applied to establishing pretext under the Maryland Whistleblower Law, respondent would be entitled to present evidence challenging the factual basis of the employment action taken against him by petitioner.

3. The ALJ also found that respondent did not make a protected disclosure, but the Court of Special Appeals held that the ALJ based this finding on an erroneous interpretation of the Maryland Whistleblower Act. *See Heller*, 161 Md.App. at 317–27, 868 A.2d at 934–41. As discussed *supra* in § I, this issue is not properly before the Court

## III.

Turning to the issue placed before the Court by petitioner's first certiorari question, I would answer it in the affirmative, and make clear that, to the extent the opinion of the Court of Special Appeals suggests that it made a factual finding that respondent reasonably believed he was alleging a violation of law, this finding was improper and would not bind the OAH on remand. The Court of Special Appeals, discussing the issue of respondent's reasonable belief, stated as follows:

"The DNR investigator, the ALJ, and the circuit court all emphasized that Heller's complaints lacked merit, though we note that none explained why DNR could use funds earmarked for Somers Cove for personnel or property at other DNR facilities when section 5–908.1 prohibits that. Of significance to this appeal, however, is that none proceeded to consider the material question for purposes of assessing whether Heller's communications qualified as protected disclosures, i.e., whether Heller made them in a good faith belief that SCM funds were being used in violation of section 5–908.1.

"We hold that, through his January 13, 2000 memo, his discussions with DNR management, and his other written complaints to his DNR supervisors, Heller made protected disclosures alleging that DNR policies and practices with respect to revenue generated by Somers Cove Marina and funds appropriated for the marina were prohibited by NR section 5–908.1."

*Heller*, 161 Md.App. at 327, 868 A.2d at 941. Unfortunately, this language is ambiguous. It seems to permit two readings. First, it could be read to hold that the ALJ made an error of law, applying the wrong legal standard in interpreting the Maryland Whistleblower Law because she interpreted "reasonable belief" as used in the Act to require the trier of fact "to measure objectively what Heller knew and believed at the

---

because petitioner did not seek review of this holding in its petition for a writ of certiorari.

time he made [the] disclosures, rather than what DNR officials knew and believed, what Heller later learned, or what DNR and the ALJ ultimately concluded." *Heller*, 161 Md. App. at 326, 868 A.2d at 940. Second, it could be read to go further, to conclude as a factual matter that respondent did have a reasonable belief that he was disclosing violations of law.

I would make clear that, to the extent the language of the opinion of the Court of Special Appeals supports this second reading, the finding was improper and would not bind the OAH on remand. As a general rule, fact finding is the province of triers of fact, not of appellate courts. *See, e.g., Dykes v. State,* 319 Md. 206, 224, 571 A.2d 1251, 1260 (1990). With respect to judicial review of agency adjudicatory decisions, State Government Article § 10–222 gives the Circuit Court reviewing the decision the power to require the presiding officer at the agency adjudication to take additional evidence prior to a hearing in the Circuit Court, State Gov't Art. § 10–222(f)(2), and to modify the agency's factual findings in light of the additional evidence, State Gov't Art. § 10–222(f)(3), but it does not give the reviewing court the power to take additional evidence or to make factual findings in its disposition of the petition for review of the agency decision. *See* State Gov't Art. § 10–222(h)(3) (giving reviewing court the power to "modify the decision" of the agency, but not the power to modify its factual findings); *but see* State Gov't Art. § 10–222(g)(2) (permitting reviewing Circuit Court to consider testimony offered by a party, not in the record before the agency, regarding alleged irregularities in procedure before the presiding officer). Therefore, the Court of Special Appeals did not have the power to make a factual finding that respondent had a reasonable belief that he was disclosing a violation of law.

Accordingly, I would affirm the judgment of the Court of Special Appeals.